Argued April 18, decided May 14, 1912.

## STATE OF OREGON *v.* FIRST NAT. BANK OF PORTLAND.

[123 Pac. 712.]

COURTS—JURISDICTION—PROBATE COURTS.

1. The jurisdiction of probate courts to administer upon the estates of decedents is primary and exclusive.

ESCHEAT—PROPERTY SUBJECT—BANK DEPOSITS.

2. Since proceedings under Sections 7378, 7379, 7380, L. O. L., for the escheat of bank deposits to the State do not assume the death of a depositor whose deposit is sought to be recovered, nor attempt to administer upon his estate, Section 7378, providing that the act shall not affect the deposit of any person known to be living, but shall apply to a deposit of an insane person or person under a legal disability, the statutes do not invade the jurisdiction of the probate courts to administer upon the estates of decedents.

ESCHEAT—NATURE OF PROCEEDINGS.

3. Section 7378, L. O. L., provides that the · cashier, etc., of every bank shall return to the Secretary of State a statement showing the amount to the credit of every depositor who has not made or withdrawn a deposit for more than seven years, the last known place of residence of such depositor, and the fact of his death, if known, and publish copies of such statements in a newspaper, but provides that the act shall not apply to the deposit of any person known to be living, but shall apply to that of an insane person or person under a legal disability, whose relative or guardian shall not have knowledge of such deposit. Section 7379 provides that such deposits shall be deemed to have escheated to the State, and the Attorney General shall demand their payment. Section 7380 authorizes the Attorney General to commence proceedings against any bank which refuses payment in the same manner as escheat proceedings for the State to recover the property of intestates without heirs; and such deposits, when collected, shall be treated as those of deceased persons which have escheated to the State, and may be reclaimed by the original depositors, heirs, or representatives in the same manner. Section 7380 ·also permits any person claiming the money to intervene and have his claim established, and requires notice by publication of escheat proceedings to be given for four successive weeks. *Held,* that the proceeding was *quasi in rem,* so that no precedent seizure of the escheated property was necessary; and the judgment of escheat discharged the bank from liability to the depositor.

ESCHEAT—VALIDITY OF STATUTES—ESCHEAT OF BANK DEPOSITS.

4. The statutes were authorized, under the power of the legislature, to escheat and hold the property of absentee depositors.

ESCHEAT—PROPERTY SUBJECT—REGULATION OF BANK DEPOSITS— "VISITORIAL POWER."

5. The statutes are not an exercise of the "visitorial powers" prohibited by U. S. Rev. St. § 5241 (U. S. Comp. St. 1901, p. 3517), providing that no association shall be subject to any visitorial powers, other than such as are authorized by the title on national banks, or are vested in the courts; the term "visitorial power," as there used, meaning power to control and arrest abuses and enforce due observance of the statutes, under Section 5240 (U. S. Comp. St. 1901, p. 3516), providing for the employment of bank examiners, authorized to examine the affairs of every banking association and make a report of the bank's condition to the controller.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a proceeding to escheat to the State certain unclaimed bank deposits, begun in accordance with Sections 7378, 7379 and 7380, which are as follows:

"Section 7378. The cashier or secretary of every bank, savings bank, savings and loan society, and every institution in which deposits of money are made, shall within fifteen days after the first day of July in the year 1907, and within fifteen days after the first day of July of each and every second succeeding year thereafter, return to the Secretary of State of the State of Oregon a sworn statement showing the amount standing to the credit of every depositor who shall not have made a deposit, or who shall not have withdrawn any part of his deposit, principal or interest, for the period of more than seven years. Such statements shall also contain the last known place of residence of post-office address of such depositor, and the fact of his death, if known. Cashiers and secretaries of such banking institutions shall publish copies of such sworn statements in a newspaper of general circulation published in a county or town where such bank is situated, and said statement shall be published at least once a week for four successive weeks, the cost of such publication to be paid pro rata out of said unclaimed deposits. The provisions of this act shall not apply to, or affect, the

deposit of, any person known to such cashier or secretary to be living, but the provisions of this act shall apply to a deposit of an insane person or a person under a legal disability, whose relatives or persons having the custody, guardianship, or control of such insane person or persons under legal disability, shall not have knowledge of such deposit.

"Section 7379. The Secretary of State shall biennially file with the Attorney General a certified copy of all reports made to him of such deposits. Such deposits shall be deemed to have escheated to the State of Oregon, and the Attorney General shall demand their payment from all banks, reporting such deposits on hand to the State Treasurer for the benefit of the common school fund.

"Section 7380. If any bank shall fail or refuse to make such payment, the Attorney General shall commence and prosecute proceedings against such bank in the same manner as escheat proceedings are commenced and prosecuted to recover for the State the estates of persons who have died intestate and without heirs. Such money, so collected and demanded of the Attorney General, or upon escheat proceedings in the courts, shall be treated and considered in the same manner as those of deceased persons which have escheated to the State , and they, or any part of them, may be reclaimed by the original depositors, or their heirs, or personal representatives, in the same manner as property belonging to estates, which have escheated to the State. In all such proceedings any person claiming any of the moneys in question, either as the depositor, or as his heir, creditor, or personal representative, may intervene as a party defendant and set up his claim thereto, and the same shall be adjudicated in such proceedings. Upon commencing such proceedings notice thereof shall be given by publication at least once each week for four successive weeks in a newpaper of general circulation, published at the place where the bank is located, and if no newspaper is published in that place, then in a newspaper of general circulation, published in the county where such bank is located. The cost of publication shall be charged as a part of the costs of the proceed-

ings; provided, however, that all balances under $1.00, which are held to the cerdit of any person longer than seven years shall escheat to the State at the appointed time, without advertising. Nothing in this act contained shall be deemed to prevent the payment by any bank to any depositor, his heirs, or personal representative, of moneys belonging to him, after the same have been reported to the Secretary of State, and before the same have been paid over to the State Treasurer, nor from deducting the amount so· paid to such depositor from the amount included in such report."

Defendant demurred generally to the complaint and, its demurrer being overruled, answered, denying that any of the moneys sought to be recovered had escheated to the State, or that any of the persons named in the statement had died, leaving heirs, and alleged affirmatively that it was a national banking association, organized and doing business under the laws of the United States. Plaintiff, upon motion, had judgment on the pleadings, and defendant appeals. There is no contention that the procedure prescribed by the Code was not regularly followed.                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Cyrus A. Dolph.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Isaac. H. Van Winkle,* Assistant Attorney General, and *Mr. James W. Crawford,* 2nd Assistant Attorney General, with an oral agrument by *Mr. Van Winkle.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1-3. The decision of the question litigated must turn upon the constitutional right of the legislature to enact the statute above quoted. It is contended, first, that the statute invades the jurisdiction of the probate courts

to administer upon the estates of decedents, which juris-
diction, as we have often held, is primary and exclusive.
*State* v. *McDonald,* 55 Or. 419 (103 Pac. 512: 104 Pac.
967: 106 Pac. 444). But the proceeding in question,
while in the nature of an escheat proceeding, does not
assume the death of a depositor, and is in no way an
attempt to administer upon his estate. In such a pro-
ceeding, proof of death would be necessary to give
jurisdiction; but in this proceeding the property is seized
and held for the owner, who may or may not be dead.
It stands to reason, and requires no citation of author-
ities to show, that, unless the proceeding operates to
release the bank from liability to the depositor, the
statute is inoperative. We think such a discharge must
naturally result. The proceeding is *quasi in rem,* and
for this reason no precedent seizure of the property
was necessary. *Hawkins* v. *Doe,* 60 Or. .437 (119 Pac.
754), and cases there cited.

The situs of the property sought to be escheated is
within the State; the defendant is within the State;
and the published notice of the proceeding, with the
names of the depositors, is sufficient to give notice to
them, or other persons interested, that such a proceed-
ing has been instituted. It is difficult to see how any
other method, so likely to attract the attention of
absentee depositors or their heirs, could possibly be
devised.

4. It may be conceded, and is, no doubt, true, that the
liability of a bank to a depositor is continuous, and that
the statute of limitations does not begin to run until
payment of such deposit is demanded and refused. But
his right to demand such payment may be defeated by
any act of the law which diverts the moneys so due
into other channels, such as garnishment for debt, pro-
ceedings in bankruptcy, and the like; and we think the

right of the State to escheat and hold the property of absentee depositors is as ample and rests upon as sound reasons of public policy as its right to escheat the property of persons who have died, leaving no known heirs.

It is common knowledge that banks sometimes become insolvent or go out of business, while the State never does either; and the law may well step in and hold safe for the owner a deposit which, from its long standing it may well be assumed that he has forgotten, or, by reason of some disability, is not able to claim; and the bank, having paid it to the State in obedience to a judgment of the court, could not be compelled to respond to the depositor. *Nelson* v. *Blinn,* 197 Mass. 279 (83 N. E. 889: 15 L. R. A. [N. S.] 651: 125 Am. St. Rep. 364: 14 Ann. Cas. 147) ; *Attorney General* v. *Provident Institution for Savings,* 201 Mass. 23 (86 N. E. 912) ; *Cunnius* v. *Reading School Dist.,* 206 Pa. 469 (56 Atl. 16: 98 Am. St. Rep. 790) ; *Cunnius* v. *Reading School Dist.,* 198 U. S. 458 (25 Sup. Ct. 721: 49 L. Ed. 1125: 3 Ann. Cas. 1121).

In *Attorney General* v. *Provident Institution for Savings,* the court uses this language: "The contract between the corporation and each depositor, by an implied condition, was to be subject to termination by the commonwealth, whenever conditions should arise that would justify the state in exercising this power to take the property into its care for the benefit of the persons entitled to it, and when the commonwealth, in view of these conditions, should assert this power."

In *Cunnius* v. *Reading School District,* it was held that the right to regulate concerning the estate or property of absentee is an attribute which, from its very essence, must belong to all governments, and that legislation to that end was not violative of the due process of law clause of the Fourteenth Amendment to the

Constitution of the United States. It was also held that a payment by the defendant to an administrator of plaintiff, appointed as an adminstrator of an absentee, was justified, and that plaintiff would not sustain an action against her debtor for the amount so paid. Mr. Justice MITCHELL points out that the power of the state to regulate the status of property of absentees was exercised under the Roman law, the laws of France and Germany, and by the common law.

5. But it is claimed that, even if this right exists, its exercise by the states is in violation of the provisions of the act, providing for the organization of national banking associations, in that it is an attempt to exercise the visitorial powers prohibited by Section 5241, U. S. Rev. St. (U. S. Comp. St. 1901, p. 3517). We cannot concur in this view. The term "visitorial power" is most frequently used with reference to the inspection and regulations of eleemosynary institutions. In *Allen v. McKean,* 1 Fed. Cas. 489, it is thus defined: "To be sure, where the government is the founder of a college, it has certain rights and privileges attached to it in point of law; but in this respect it is not distinguishable from any private founder. Every founder of an eleemosynary corporation (that is, the *fundator perficiens,* or person who originally gives to it its funds and revenues) and his heirs have a right to visit, inquire into, and correct all irregularities and abuses which may arise in the course of the administration of its funds, unless he has conferred (as he has a right to do) the power upon some other person. This power is commonly known by the name of the visitorial power, and it is a necessary incident to all eleemosynary corporations; for these corporations, being composed of individuals, subject to human frailties, are liable, as well as private persons, to deviate from the ends of their institution;

and therefore ought to be liable to some supervision and control. 1 Bl. Comm. 480. But what is the nature and extent of this visitorial power? Is it a power to revoke the gift, to change its uses, to devest the rights of the parties entitled to the bounty? Certainly not. It is a mere power to control and arrest abuses, and to enforce a due observance of the statutes of the charity. Lord Holt, in *Philips* v. *Bury* 2 Term R. 352, says: "The visitorial power is an appointment of law. It ariseth from the property, which the founder had in the lands assigned to support the charity; and, as he is the author of the charity, the law gives him and his heirs a visitorial power, (that is, an authority to inspect the accounts and regulate the behavior of the members that partake of the charity) ; for it is fit the members that are endowed, and that have charity bestowed upon them, should not be left to themselves (for divisions and contests will arise amongst them about the dividend of the charity), but pursue the intent and design of him that bestowed it upon them!' * * And so the law is laid down by Lord Holt, in *Philips* v. *Bury,* 2 Term R. 352, 353. This visitorial power is an hereditament, founded in property, and valuable in the intendment of law; and, where it is vested in trustees, there can be no amotion of them from their corporate capacity, and no disturbance or interference with the just exercise of their authority, unless it is reserved by the statutes of the foundation or charter."

The government, as founder of the National Banking Association, possesses the same visitorial powers with respect to it as a private institution. The visitoral power over any civil corporation resides in the authority creating it; and when we seek for a definition of the term "visitorial power," as used in the National Banking Act, we must assume that it means the power, to paraphrase

the definition in *Allen* v. *McKean,* 1 Fed. Cas. 489, "to control and arrest abuses, and to enforce a due observance of the statutes."

The term should also be interpreted in the light of the visitoral powers enumerated in the National Banking Act. These in brief are set out in U. S. Rev. St. § 5240 (U. S. Comp. St. 1901, p. 3516), which provides for the appointment of bank examiners, authorized to make a thorough examination of the affairs of every banking association, examine its officers and agents, under oath, and make a report of the condition of the bank to the controller. These, we take, are the visitorial powers referred to, and which no authority but congress can authorize. The holding of the federal courts is in accordance with this view.

The case of *First Nat. Bank of Youngstown* v. *Hughes* (C. C.) 6 Fed. 737, is a case in point. Hughes was an assessor, and, in conformity with the laws of Ohio, served a notice upon the president of the plaintiff bank, requiring him to appear at a date specified and bring with him the books of account of the bank, showing the deposits up to a certain date and the names of the depositors and the amount deposited. The president refused to produce the books or give the list of depositors, and, upon threat of Hughes to press the investigation before the grand jury, brought a suit to enjoin him from proceeding further, on the ground that the investigation was an exercise of the "visitorial powers" prohibited by Section 5241, U. S. Rev. St. The suit was dismissed; the court saying: "But do the defendants, or either of them, propose the exercise of visitorial authority? We think not. Visitation, in law, is the act of a superior or superintending officer, who visits a corporation to examine into its manner of conducting business, and enforce an observance of its laws and regu-

lations.    Burrill defines the word to mean 'inspection; superintendence; direction; regulation.' The exercise of no such authority is contemplated by defendants.    They do not contemplate inspection, supervision, or regulation of complainant's business, or an enforcement of its laws or regulations." To like effect are *National Bank* v. *Commonwealth,* 9 Wall. 353 (19 L. Ed. 701) ; *McClellan* v. *Chipman,* 164 U. S. 357 (17 Sup. Ct. 85: 41 L. Ed. 461) ; *Guthrie* v. *Harkness,* 199 U. S. 148 (26 Sup. Ct. 4: 50 L. Ed. 130: 4 Am. Cas. 433) ; *Waite* v. *Dowley,* 94 U. S. 527 (24 L. Ed. 181).

In *National Bank* v. *Commonwealth,* the court observes: "The principle we are discussing has its limitation—a limitation growing out of the necessity on which the principle itself is founded.    That limitation is that the agencies of the federal government are only exempted from state legislation, so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government.    Any other rule would convert a principle, founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers, into an unauthorized and unjustifiable invasion of the rights of the states.    The salary of a federal officer may not be taxed; he may be exempted from any personal service which interferes with the discharge of his official duties, because those exemptions are essential to enable him to perform those duties.    But he is subject to all the laws of the state which affect his family or social relations or his property; and he is liable to punishment for crime, though that punishment be imprisonment or death.  So of the banks.  They are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation.  All their contracts are governed

and construed by the state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts are all based on state law. It is only when the state law incapacitates the bank from discharging their duties to the government that it becomes unconstitutional."

We conclude, therefore, that national banks are only exempted from state legislation to the extent that such legislation impairs their efficiency to perform the functions which they were designed to serve, and that the legislation here proposed does not have this effect.

It is true that it is urged that defendant's assets will be depleted *pro tanto* by requiring it to pay this money over to the State; but it is also true that its liabilities will be extinguished to the same extent, and the objection is without merit.

The judgment is affirmed.    AFFIRMED.