SAMUEL ROTNOFSKY, Appellant, *v.* CAPITOL DISTRIBUTORS CORP., Respondent.

First Department, October 31, 1941.

*David I. Michaelson* of counsel [*Saul Grover Wlodaver*, attorney], for the appellant.

*Maurice Knapp* of counsel [*Samuel S. Allan* with him on the brief; *Weisman, Celler, Quinn, Allan & Spett*, attorneys], for the respondent.

CALLAHAN, J. Plaintiff, a chauffeur formerly employed by defendant corporation, sues for breach of contract of employment.

He claims the right to recover damages because of his discharge on May. 3, 1940, contending that he had a binding contract which continued his employment to December 13, 1941.

Plaintiff concedes that no contract was entered into directly between himself and the defendant, but asserts that his rights arise under an agreement made between a labor union, of which he is a member, and the defendant. This agreement is in writing and contains terms usually found in a collective bargaining agreement. It states that the parties making the contract are the " employer " (the defendant) and the " union " (The Drivers & Chauffeurs Local Union No. 816). It recites the nature of the employer's business, and states that, for the purpose of insuring a satisfactory agreement with those employees who are engaged in the distribution of its products, it will employ only chauffeurs and helpers who are members of the contracting union. All employees so hired by defendant are required to make application for membership in the union, and, if rejected for membership, the employer agrees to discharge such employees immediately. The contract then proceeds to set forth numerous terms with relation to wages, hours and conditions of employment. It then recites as follows:

" 6. Discharge — The employer will not discharge any of its employees within the classes provided for herein for union activities.

" In discharging, for economic reasons, the employer will abide by and follow seniority.

" The employer agrees not to discharge any regular employee provided for herein, except for cause, upon one week's notice, except in the case of dishonesty where no notice shall be required. The employees, desiring to terminate their employment with the employer, shall give one week's notice to the employer of their intention so to do."

Lastly, the contract fixes the duration thereof in the following language: " This agreement shall take effect on December 14, 1939 and continue and be binding upon the parties hereto until December 13, 1941."

At Special Term, and on this appeal, plaintiff's contentions were two-fold: *first*, he claimed that the union acted as his agent in making the written contract, and, *second*, he claimed that by hiring plaintiff defendant adopted stipulations contained in the agreement between itself and the union as the terms of a separate contract between plaintiff and defendant.

It is plain that neither of these propositions is legally correct. On its face, the contract shows that it was not one made by the labor union as agent for the plaintiff, but one made by it as principal

for the purpose of creating rights in the union as a separate legal entity.

Plaintiff's contention of a contract by adoption is equally untenable. In any event, such a contract would run counter to the provisions of the Statute of Frauds.

It is now suggested that what plaintiff is really trying to claim is that he has the right to enforce the agreement between the union and the defendant as a third party beneficiary; that as a regularly employed chauffeur the contract between the employer and the union created for plaintiff's benefit a hiring until December, 1941.

Assuming that plaintiff might have some enforcible rights as third party beneficiary under this contract, as we construe the agreement it appears clear that these rights do not include the right of continuous employment for the balance of the collective bargaining period. The two-year period fixed in the contract did not purport to fix the term during which member employees were to remain in the service of the defendant. It related solely to the period during which the collective bargaining agreement would be enforcible. The clause that the employer was not to discharge any regular employee, except for cause, must be read in connection with the whole of the agreement. So read, we think that it was inserted to insure the retention of union men, and not to provide any fixed period of continuous employment for individual employees. The provision that employees who were rejected for membership in the union were to be discharged immediately, demonstrates this.

By way of illustration, we may point out that subject to the provision as to notice, the employer would undoubtedly have the right to hire three chauffeurs one week, increase the number to ten the second week, and to reduce it again to three the third week, if business conditions warranted hiring them in such numbers. If plaintiff's contentions are correct, the ten men hired the second week would have contracts of employment for the balance of the two-year period; and to defeat an action for breach of contract by any of them, the burden would be on the employer to show that in cutting down his force a discharge was justified by "economic reasons." We do not construe the provision of the collective bargaining agreement to effect any such contract rights in the individuals employed. Therefore, even if plaintiff may proceed as a third party beneficiary, he does not have the cause of action which he asserts.

The judgment and order should be affirmed, with costs.

MARTIN, P. J., GLENNON and DORE, JJ., concur; UNTERMYER, J., dissents and votes to reverse and deny the motion.

UNTERMYER, J. (dissenting). It is to be regretted that the plaintiff's case was presented to the Special Term on the untenable theory that the union of which the plaintiff is a member was his agent to execute the contract for the breach of which he seeks damages. The true theory on which the plaintiff must rely is that he is a third party beneficiary under the contract (*Gulla* v. *Barton*, 164 App. Div. 293), which was made by the union with the intention of benefiting those members who might then or thereafter be employed by the defendant. (Compare *Seaver* v. *Ransom*, 224 N. Y. 233.) That conclusion is confirmed by the recital of the contract that the employer thereby " desires to insure the establishment of a satisfactory agreement *with its employees.*" (Italics mine.)

One of the terms of the contract intended for the protection of the defendant's employees is that

" In discharging, for economic reasons, the employer will abide by and follow seniority.

" The employer agrees not to discharge any regular employee provided for herein, except for cause, upon one week's notice, except in the case of dishonesty where no notice shall be required. The employees, desiring to terminate their employment with the employer, shall give one week's notice to the employer of their intention so to do."

These provisions, no less than the provisions which relate to hours of work and compensation, are plainly intended for the benefit of the defendant's employees (*Pond* v. *New Rochelle Water Co.*, 183 N. Y. 330; *Farnsworth* v. *Boro Oil & Gas Co.*, 216 id. 40) by assuring to them security of employment and, for the duration of the union contract, prohibiting their discharge without cause, except for economic reasons, and then only according to seniority. An employee discharged in violation of these provisions, as the plaintiff claims to have been discharged, is entitled to assert a cause of action for damages caused by the defendant's failure to continue the employment during good behavior for a period coextensive with the duration of the union contract unless economic causes intervened.

It is true, no doubt, that an employee could not avail himself of the provisions of the contract relating to arbitration because they only apply " should any difference arise between the employer *and the union.*" (Italics mine.) For that reason a previous application by the plaintiff for arbitration of the controversy was properly refused. The refusal, however, should not prevent the plaintiff

from enforcing against the defendant in an action at law those provisions of the contract which were intended for his benefit. It surely was not intended that the plaintiff and others in like position employed to work under the terms of the contract between the defendant and the union should be left without some remedy.

Whether the plaintiff's discharge was justified, as the defendant contends, or whether, as the plaintiff contends, the discharge was without cause; whether the union consented to the plaintiff's discharge or whether, as the plaintiff alleges, the union did not consent, are questions of fact which should be reserved for the trial and should not be determined on this motion for summary judgment. It should be observed, however, that the union could not relinquish rights of the plaintiff even though they were the product of a contract to which he was not a party after he had manifested his acceptance of its terms by commencing to work under the contract. (*Gifford* v. *Corrigan*, 117 N. Y. 257.)

The judgment and order should be reversed and the motion for summary judgment denied.

Judgment and order affirmed, with costs.