STEPHEN HUDAK, Plaintiff, *v.* HORNELL INDUSTRIES, INC., Defendant.

JOSEPH STIKA, Plaintiff, *v.* HORNELL INDUSTRIES, INC., Defendant.

Supreme Court, Trial Term, Steuben County, October 28, 1950.

*Albert E. Hollis* for plaintiffs.

*W. Earle Costello* and *Justin V. Purcell* for defendant.

WHEELER, J. These cases were tried together as companion actions at the March, 1950, Term of this court. At the close of the plaintiffs' evidence, defendant moved for dismissal of each complaint upon the failure to prove a cause of action. Decision

was reserved upon this motion, which was renewed at the close of the evidence. Likewise, at the close of the evidence, plaintiffs and defendant moved for directed verdicts, neither party having requested to go to the jury on any question of fact. Briefs were to have been submitted within ten days by plaintiffs, with five days being granted to the defendant to reply. To date, the court has received no assistance from the plaintiffs on the questions of law involved and must now decide this matter without brief of their counsel.

What little dispute there might be regarding the facts is not important, the salient facts and features of the situation being fairly well agreed upon by both plaintiffs and defendant. In 1948 the plaintiffs were in the employ of Hornell Industries, Inc., by whom they had been employed for some years. In August of that year the defendant and the Machine Printers Beneficial Association of the United States, the plaintiffs' labor union, entered into a contract setting forth the wages, hours, and working conditions of the employees who were members of that association; the agreement also contained the usual provisions regarding discharge of union employees and arbitration of differences. On January 31, 1949, these plaintiffs were advised there was no more work for the present and were told not to return to work the day following. As the evidence indicates, there never was any more work for the plaintiffs; the plant owned by the defendant closed, at least as far as employment for these plaintiffs was concerned, on February 1, 1949. After reporting for work several different times, and later receiving unemployment compensation for a few weeks, both plaintiffs found work elsewhere at the same or better wages than they had received at Hornell Industries, Inc.

By reason of a provision in the contract signed by the union and the defendant employer, the plaintiffs feel that their employment was guaranteed for a year, and have sued for damages for breach of this contract. The defendant insists that there was no breach of contract, that there was no guarantee of employment, but only a guarantee of wages and, further, that the contract contemplating, as it does, discharge for just cause and an arbitration procedure to determine whether or not any discharge is proper, requires compliance with the arbitration provisions as a condition precedent to any action.

The contract on which plaintiffs found their actions provides in pertinent part:

" For the purpose of facilitating the peaceful adjustment of differences that may arise from time to time and of promoting

harmony and efficiency to the end that the company, together with the Association and its members, may be mutually benefited, the parties hereto contract and agree with each other as follows:

" *Section 1.  Salary And Hours*

"The Company agrees to continue to employ the members of the Association now presently in the employ of the Company during the period covered by this Agreement and guarantees during said period to pay to each journeyman printer a weekly wage of One Hundred Twenty ($120.00) Dollars per week."

Increases in wages are likewise provided for, as well as vacations, hours of work, overtime pay, and working conditions.

It is the first clause of the first sentence of section 1 which obviously furnishes the sole ground, if any, for these actions. At first impression, the clause seems explicit, but its apparent positiveness becomes less definite when read, as it must be, as a part of the entire contract.  Placed in its proper context, the meaning of the disputed clause is modified to correctly express the intentions of the contracting parties at the time the agreement was entered into.  This intent of the parties must be determined by a reading of the whole contract which, in this instance, indicates that the primary purpose of the agreement was the guarantee of certain wages and hours for the members of the labor union employed by the defendant.  It appears rather obvious that the contracting parties assumed, perhaps without cognizance, the continued operation of the defendant's plant. Though the employer agreed to " continue to employ the members of the Association now presently in the employ of the Company during the period covered by this Agreement ", there is not the strong language used here as is used in the " guarantee " of wages, nor is there anything in the agreement whereby the defendant employer binds itself to continue the business indefinitely, regardless of circumstances, either within or beyond its control.  Had the association desired to guarantee the employment for a definite calendar term, the choice of unequivocal language would not have been difficult and should have been utilized.  In passing, it might also be noted that the section which includes the disputed clause is entitled " SALARY AND HOURS ".

The usual employment contract which specifically and categorically guarantees employment for a fixed period contains the reciprocal agreement of the employee to continue to work for the employer for the stated period.  Even in labor union contracts, which attempt to guarantee a definite term of employ-

ment, the union usually stipulates that any employee who quits the employer covered by that contract will not be suffered to work in another union shop during the time of the contract. These plaintiffs, while protected by the contract in question, were not bound to continue in the defendant's employ. While this lack of mutuality is apparently not destructive of the labor contract in this State, it is most properly considered in the interpretation of the contract for the purpose of ascertaining the intentions of the parties.

While it is, of course, possible that an employer would be sufficiently optimistic to presume his continued operation, it is not reasonable that many employers would intentionally guarantee a year's employment without some reciprocal assurance that they would have the necessary labor force. Nor would many employers intend to guarantee a definite term of employment under any and all circumstances. Under the interpretation of this contract urged by the plaintiffs, such a major disaster as destruction of the factory by explosion, flood, fire, or perhaps an aerial bomb in the event of war, would not relieve the defendant from paying the full wages of these plaintiffs — full wages for work not performed by them. Carried to such an extreme, the interpretation is absurd, but the disaster resulting from physical violence is not less effective than the disaster caused by economic disturbances, not in the control of the employer, such as the complete failure to receive orders from buyers. There was no contradiction of the testimony of the employer in these actions that the lack of business was due to circumstances beyond its control, that there was simply no work to be done, and that it was impossible to continue operations without work.

Nor does it seem either likely or reasonable that the labor union, in reaching the agreement, intended that the employees covered therein should be guaranteed employment for the term of the contract under any or all circumstances. If the employer, for economic reasons, should be forced to drastically curtail production in order to keep operating at all, it would be an unreasonable burden upon him to continue to employ his entire labor force; the employees would necessarily have to be reduced in rough proportion to the output of the plant. Certainly, the bargaining agent of any labor group would not endanger the jobs of all the employees in the bargaining unit by insisting that the employer continue to hire employees for whom he could find no work, as this additional burden might result in the complete collapse of the business.

After a careful consideration and study of the entire agreement, and for the reasons stated above, this court is convinced that the proper interpretation of the section of the contract for the breach of which these plaintiffs bring their action is that Hornell Industries, Inc., would employ members of the association as printers, if *any* printers were employed, and, in the first instance, would employ those particular individuals then members of the association and then in the employ of the company, as long as printers were employed by the company. The first clause of the first sentence of section 1 merely identifies those printers who are to be employed during the term of the contract, should operations continue. (*Rotnofsky* v. *Capitol Distributors Corp.* (262 App. Div. 521.) The company is not bound by the contract to keep operating for the entire year, and it would be not only unreasonable but a strained construction of the contract to hold that these plaintiffs were unconditionally guaranteed employment for the term of the contract.

It is fundamental that the businessman has the undeniable prerogative to continue or discontinue in business, or to change, alter or modify the nature or extent of his business (*Paul* v. *Mencher,* 169 Misc. 657, affd. 254 App. Div. 851, motion for leave to appeal denied 279 N. Y. 813; *Amelotte* v. *Dold Packing Co.,* 173 Misc. 477), and, unless he has specifically and unequivocally contracted away this right, the courts are loath to hold him liable to continue in business or pay the operating expenses thereof until forced into bankruptcy. The courts have long been aware of the beneficent objectives of labor union contracts and have, for the most part, accorded these agreements a liberal construction in order to accomplish their evident purpose, which ordinarily is to protect both the employer and employee. (*Amelotte* v. *Dold Packing Co., supra.*) The fact that a collective bargaining agreement is entered into does not mean that the rights, privileges and benefits stemming from this contract flow only in one direction.

We are putting aside the questions raised regarding the right of these plaintiffs to sue upon this contract to which they are not parties, and the issue of the failure of plaintiffs to resort to the arbitration provisions of the contract, for the reason that the interpretation of the disputed clause relating to an alleged definite term of employment is determinative of the action.

The motions by defendant for directed verdicts dismissing the complaints should be and hereby are granted. Plaintiffs' motions for directed verdicts are, therefore, denied.

Submit judgment accordingly.