In the Matter of the Estate of FRANK KLEIN, Deceased.

Surrogate's Court, Saratoga County, September 4, 1952.

*Charles Recht,* in person, and *Frank M. Noonan* for Charles Recht, petitioner.

*John W. Nichols, County Attorney,* for Walter L. Allen, as Saratoga County Treasurer, respondent.

SHERMAN, Acting Surrogate. On December 7, 1951, an order was signed by the Honorable JOHN F. DOYLE, Surrogate of Saratoga County, upon a petition of one Charles Recht, dated November 9, 1951, directing Walter L. Allen, as Treasurer of the County of Saratoga, to show cause before the Surrogate's Court in the city of Saratoga Springs on December 15, 1951, as to why an order should not be granted directing payment to said petitioner of the sums of $5,480.66 and $10,961.30 as and for the distributive shares of Marie Fiamcik (Fiamcikova) and Gabriela Kaleta (Kaletova), distributees of the estate of Frank Klein, plus any accumulated interest and minus any legal fees due to the said Saratoga County Treasurer.

In granting the order to show cause, the Surrogate disqualified himself from hearing and determining the matter, and referred same to Hon. RICHARD J. SHERMAN, Saratoga County Judge, to sit and determine as Acting Surrogate of Saratoga County.

The matter duly came on for argument on December 15, 1951, at which time the petitioner appeared by his attorney, Frank M. Noonan, and the Saratoga County Treasurer by his attorney, John W. Nichols, Saratoga County Attorney. The respondent filed an answer setting forth various objections to the petition. The matter was adjourned to February 2, 1952, and further adjourned to May 3, 1952, at which time the petitioner appeared in person and by his attorney, Frank M. Noonan. Respondent was represented by his attorney, John W. Nichols. Testimony was offered on behalf of the petitioner, and petitioner and witnesses were cross-examined by respondent's attorney. The court reserved decision and directed the parties to submit briefs on or before June 20, 1952, and reply briefs on or before July 1, 1952.

The order to show cause, the petition, the certificate of disqualification, the answer, the testimony, the exhibits admitted in evidence, and the record of proceedings in the Matter of the Estate of Frank Klein are before the court, together with petitioner's brief, memorandum in behalf of respondent and petitioner's reply memorandum.

The decree of the Hon. GEORGE O. TUCK, Surrogate, judicially settling the account of Arthur I. Bumstead, administrator of the goods, chattels and credits of Frank Klein, deceased, sets forth the following:

And it is further ordered and decreed that out of the balance so found, as last above, remaining in the hands of said administrator, to wit, the sum of $16,441.96, he pay to the following persons the sums set opposite their respective names, which said sums are hereby adjudged to be the amounts due said persons respectively on this accounting:

To Maria Fiamcikova $ 5,480.66
To Gabriela Fiamcikova Kaletova 10,961.30
Leaving in the hands of the said administrator the sum of 0 to be accounted for hereafter, and it further appearing that special circumstances make it appear desirable that payment of the sums to Maria Fiamcikova and Gabriela Fiamcikova Kaletova, distributees of the estate of the deceased, be withheld in that both distributees are resident nationals of Czechoslovakia, it is

ORDERED, ADJUDGED AND DECREED that the sum of $5,480.66 due Maria Fiamcikova be paid into this court by deposit of the same with the Treasurer of the County of Saratoga for the benefit of Maria Fiamcikova, such distributee, or such other person or persons who hereafter appear to be entitled thereto, and it is further ORDERED, ADJUDGED AND DECREED that the sum of $10,961.30 due Gabriela

Fiamcikova Kaletova be paid into the court by deposit of the same with the Treasurer of the County of Saratoga, for the benefit of Gabriela Fiamcikova Kaletova, such distributee, or such other person or persons who hereafter appear to be entitled thereto.

No question is presented here to the effect that this court does not have the power and authority in the welfare and interest of the distributees, to deny petitioner's application herein, where it appears that a distributee would not have the benefit or use or control of the money, or where other special circumstances make it appear that such payment should be withheld.

Section 269 of the Surrogate's Court Act provides as follows: " § 269. *When money or property may be retained.* * * * Where it shall appear that a legatee, distributee or beneficiary of a trust would not have the benefit or use or control of the money or other property due him, or where other special circumstances make it appear desirable that such payment should be withheld, the decree may direct that such money or other property be paid into the surrogate's court for the benefit of such legatee, distributee, beneficiary of a trust or such person or persons who may thereafter appear to be entitled thereto. Such money or other property so paid into court shall be paid out only by the special order of the surrogate or pursuant to the judgment of a court of competent jurisdiction.'' (Amd. by L. 1939, ch. 343, eff. April 24, 1939.)

By chapter 343 of the Laws of 1939 the last two sentences of the section were added. The amendment was proposed by the Executive Committee of the Surrogates Association of the State of New York. The bill or revision notes recite: " The purpose of the amendment is to authorize the deposit of moneys or property in the Surrogate's Court in cases where transmission or payment to a beneficiary, legatee, or other person.resident in a foreign country might be circumvented by confiscation in whole or in part. The amendment authorizes the impounding of the fund by the Surrogate to await the time when payment can be made to the beneficiary for his own benefit, use and control.''

The courts have consistently upheld the provisions of the section as so amended.

The petitioner in his brief raises two points: One, that the petitioner has presented a prima facie case. Two, that no action has been made by the United States Government suspending or restricting the transmittal of payments to beneficiaries in Czechoslovakia.

Since February 9, 1951, the United States Government through the action of its Treasury Department and in concurrence with the State Department, has suspended transactions involving payment of moneys to nationals of Soviet Russia and of the other foreign countries behind the so-called Iron Curtain. It is true that the directive relates to checks or warrants drawn against funds of the United States or agencies or instrumentalities thereof, but the reasoning for the necessity of issuing such an order or directive is important.

Section 211.3 thereof (Code of Fed. Reg. [1949 ed.], tit. 31, § 211.3) refers particularly to Albania, Bulgaria, Czechoslovakia, Estonia, Hungary, Latvia, Lithuania, Poland, Rumania, the Union of Soviet Socialist Republics, the Russian Zone of Occupation of Germany and the Russian Sector of Occupation of Berlin, Germany.

It is a well-recognized fact that the afore-mentioned countries and zones and sectors are behind the so-called Iron Curtain, and this court will take judicial notice of this fact.

Then there follows the reason for the issuance of the order or directive: '' There is not a reasonable assurance that a payee in those areas will actually receive checks or warrants   *   *   * and be able to negotiate the same for full value.''

Whether or not the order or directive is applicable to public or private funds is not relevant to the issue here. The important factor is whether or not there is a reasonable assurance that a distributee will actually receive the moneys to which he is entitled within the contemplation of section 269 of the Surrogate's Court Act.

It is a matter of common knowledge that the communist theory of government is entirely different than the theory of government operated in the free world, and particularly in the United States. The communist plan is to dominate and rule the world. The man who drew up the plan was Karl Marx, the man who put it into action was Lenin, and the man who made the plan a world force was Josef Stalin. Marx wanted a world in which people owned no property, and took orders without question. The rights of the individual were to be destroyed, and this policy has been continued and enforced, even to the destruction of the individual in opposition.

Here we have the rights of the individual protected under the Constitution and the Bill of Rights. Here, there could be no question but what a distributee would receive moneys due her, under any circumstances, if legally entitled. Our basic idea is that each person is a free individual who must think and

act for himself as an independent human being, protected by law as to his person and property.

Common knowledge tells us that private ownership of property has been abolished in the Soviet Union, and its satellite nations, including Czechoslovakia. Land is the property of the Government and personal property, including moneys, seems to be subject to confiscation, except for small amounts controlled by the Government. According to the press, plans are now under way to strengthen and augment the communistic program, relating to individual rights.

Nowhere in the petition does it state that the distributees in this case will actually receive the distributive share to which they may be entitled.

Confusion also exists as to whether or not Maria Fiamcik rod. Scensna and Gabriela Kaletova rod. Fiamcikova, allegedly signing the power of attorney, are the identical persons to whom distribution of the estate of Frank Klein should be made. Due to unsettled existing conditions and the inability to ascertain what goes on behind the so-called Iron Curtain, there apparently is no proof of such authenticity by duly accredited representatives of the Government of the United States.

The power of attorney attached to the petition is in English. There is no proof before this court that the persons who executed such power of attorney knew the nature and contents of the document allegedly executed by Fiamcikova Maria rod. Scensna and Gabriela Kaletova rod. Fiamcikova. The only certification, according to the translation, is by Joseph Kristinik, clerk of the District Court of Stara Lubovna, and that certification only states that the signatures are true and correct, while the certification by the United States Vice Consul is as to the signature of Joseph Kristinik.

Petitioner's reply brief argues that the cases cited by respondent are inapplicable.

I have examined the following cases cited by the petitioner's attorney: *Matter of Landau* (172 Misc. 651, mod. 187 Misc. 925); *Matter of Alexandroff* (61 N. Y. S. 2d 866); *Matter of Adzericha* (61 N. Y. S. 2d 867), but the reason for the modification in the *Landau* case does not appear as of record, and in the latter cases, there were findings based upon proof, not existing in the present case: *Matter of Bold* (173 Misc. 545); *Matter of Thomae* (199 Misc. 540); *Matter of Geffen* (199 Misc. 756); *Matter of Best* (200 Misc. 332); *Matter of Yee Yoke Ban* (200 Misc. 499); *Matter of Braier* (279 App. Div. 1008, affd. 305

N. Y. 148); *Matter of Liebl* (201 Misc. 1092); *Matter of Wong Hoen* (199 Misc. 1119); *Matter of Getream* (200 Misc. 543) are controlling.

*Matter of Bold* (*supra*) relates to a next of kin in Odessa, Union of Soviet Socialist Republics.

*Matter of Thomae* (*supra*), the next of kin resides in the Russian Zone of Occupation of Germany.

The *Yee Yoke Ban* case (*supra*) and the *Wong Hoen* case (*supra*) are Chinese.

With respect to the *Geffen* case (*supra*) no withdrawal was ordered for a resident of Lithuania.

The *Braier* case (*supra*) is Hungarian, as is the *Getream* case (*supra*).

The *Best* estate (*supra*) relates to Soviet heirs.

In the *Liebl* case (*supra*), the holding was: " When Theresie Liebl sent the property here she impliedly submitted it to the law of this state ". (P. 1106.)

All of these cases concern nationals behind the so-called Iron Curtain, and they are just as applicable to a resident of Czechoslovakia as to a resident of the Union of Soviet Socialist Republics or any of its satellites.

Once again, there has been no testimony offered on the question of the distributees receiving their distributive shares, and no testimony as to the tax laws of Czechoslovakia applicable to the instant case; or the rights of its citizens to receive distributive shares to which they may be legally entitled. No testimony has been presented to this court regarding any understanding, agreement or treaty between this country and the Government of Czechoslovakia as to payment of distributive shares to residents of Czechoslovakia.

I cannot in good conscience grant the petition herein because there is not a reasonable assurance that the alleged payees herein will actually receive checks or warrants and negotiate the same for full value.

It appears that the alleged distributees would not have the benefit or use or control of the money or property due them.

Furthermore, special circumstances make it appear that such payments should be withheld, and for that purpose, the previous decree of this court will not be disturbed.

The application and request for payments is denied.

Submit order, and for the purpose of settlement, a hearing will be held by this court on notice.