Edgab F. Hazleton, S.
In subdivisions (a) and (b) of paragraph “ pitth ” of her will, decedent gave 10% of her estate to her grandson, Charles Jedlicka, Jr., who resides in the United States, and 10% to her niece, Anna Granzales, who resides in France. Then follows disposition of the residuary estate in trust for the benefit of four relatives, decedent’s sister, Anna Bleha, her brother, Fred Cernov'sky, a niece, Lydia Cernovska and a nephew, Jaromir Cernovsky, all of whom reside in Czechoslovakia, behind the iron curtain. Although a gift is created, it is clear that decedent not only wanted her four relatives to have the benefit of the residuary estate, but wanted the corpus thereof "turned over to them in toto at once provided there were no risk of her American dollars falling into the coffers of a Communist controlled country. With that thought in mind, she insisted that the trust be constructed as it appears in her will. The warnings of her attorney, who was apprehensive lest the trust be declared void for violation of our rule against perpetuities, were to no avail.
Here are the trust provisions:
“It is my wish that this trust shall be a common trust and that the beneficiaries as named shall share the benefits and the distribution of its assets, while they are living.
“ The Trustees shall hold, invest, reinvest the funds under their control, collect rents, issues and profits therefrom, and use the income, and even invade the principal, if necessary, and dispose of the trust in the following manner.
“ (a) If they are able to do so they may distribute the trust funds to the beneficiaries immediately, or,
“ (b) Send the beneficiaries installments on a quarter annual or semi annual periods, or
“ (c) If it appears that the beneficiaries will not have the benefit or control in accordance with provisions (a) and (b) preceding because their government does not allow them to have personal control, then and in such event the Trustees are requested to send to the beneficiaries food and clothing marcels.
“(d) It is further provided that if the purpose of fulfillment of this trust is impossible or ineffectual, I empower my executrices, or the survivor of them, in their discretion to terminate *1071 this trust and pay over the principal to the legatees named in paragraph fifth (a) and (b) in equal shares, share and share alike, or to their respective direct issue.”
The petitioning executrices attack the validity of the purported disposition, contending that it constitutes an unlawful suspension of the absolute power of alienation. Joining in this view are the respondents Lydia Jedlicka, a possible distributee of the decedent in case of intestacy, and Charles Jedlicka, Jr., presently in the military service, through his court-appointed special guardian. While the petitioners and the special guardian urge that because of the invalidity of the trust, the corpus thereof passes pursuant to the provisions of subdivision (d) of the “fifth” paragraph, the respondent Lydia Jedlicka contends that the invalidity of the trust results in intestacy as to such corpus, thus entitling her to participate in its disposition.
The named beneficiaries of the purported trust understandably take issue with these contentions. It is their position that separate trusts were intended and created by the testatrix as to each beneficiary although the trust corpus was to be held in one unit; that because of their foreign residence in a country subject to Soviet control, performance by the trustee at present is impossible and the trust is thus rendered passive in nature; that by reason thereof, the corpus should be disposed of pursuant to the provisions of section 269 of the Surrogate’s Court Act, which authorizes the payment of money or other property into court for the benefit of beneficiaries situated similarly to those in this case.
The rule against perpetuities, as embodied in section 11 of the Personal Property Law, provides in substance that the absolute- ownership of property may not be suspended for more than two lives in being. It is interesting to note that at long last this obsolete statute has been amended by legislative enactment effective September 1, 1958, whereby the “ two lives ” limitation is abolished. Had the testatrix survived to or after September 1, 1958, there would be no doubt as to the validity of the trust. However, the amendment, being presently inoperative, cannot apply to the instant case. Applying section 11 as it presently exists, I am constrained to hold that the trust attempted to be created is invalid. It manifestly violates the rule against perpetuities since, as a single trust, its duration is measured by more than two lives in being and it cannot be judicially separated into four separate trusts, one for each beneficiary, as was done in Matter of Goldstein (3 A D 2d 16) which case is clearly distinguishable. Limitations on the dura *1072 tion of the trusts declared to exist in the Goldstein case were easily established from the words of the testator. Such limitations cannot be determined from the language of the will in the instant case.
Nor can the attempted trust be designated as a passive trust, as contended by the named beneficiaries. Their reliance upon Matter of Schaefer (121 N. Y. S. 2d 233) is without weight, for in that case no duties were imposed upon the trustees beyond holding the funds, and no right of possession vested in such trustees. In the instant case, the trustees are directed to hold, invest, and reinvest the funds, to collect and use the income, and are permitted to invade the principal. The trust, if valid, was obviously intended as an active trust.
In a proceeding to construe a dispositive provision of a will, it is fundamental that the intent of the decedent should be effectuated, if possible, subject of course, to the principles of law applicable. (Matter of Fabbri, 2 N Y 2d 236.) In this case, it is abundantly clear that the testatrix desired that 80% of her estate pass outright to the four named beneficiaries, but because of the existing world conditions, she felt compelled to add provisions in her will aimed at preventing her estate from falling into the control of a Communist block country. The second subdivision (a) of the “ fifth ” paragraph of the will clearly indicates an intent for immediate paying over and vesting of the trust funds, if possible.
Under such circumstances, and in the light of the provisions of section 269 of the Surrogate’s Court Act, the course to be pursued becomes evident. It has been stated heretofore that the trust is invalid because it violates the present provisions of section 11 of the Personal Property Law, but it does not follow that intestacy results. Where the general plan of the testatrix can be preserved, a construction will be adopted to prevent intestacy despite the existence of other invalid provisions in the will. (Matter of Lyons, 271 N. Y. 204.) The intent to benefit the four relatives residing in Czechoslovakia is positive. That intent should be sustained, if lawful. Section 269 of the Surrogate’s Court Act provides the legal support needed, since the statute is intended for the protection of legatees such as the four named beneficiaries. (Matter of Braier, 305 N. Y. 148; Matter of Weidberg, 172 Misc. 524.)
This is not the first time this court has written upon this subject (see Matter of Getream, 200 Misc. 543 [1951]). But times change and it may be that under present day conditions in Czechoslovakia repondents would enjoy that degree of benefit and use from the bequests as envisaged by decedent and con *1073 templated by section 269 of the Surrogate’s Court Act; however, under section 269 as interpreted in Matter of Braier (supra), a hearing will have to be had, proof adduced and a finding made by this court as to the probabilities under present conditions in Czechoslovakia of such beneficiaries obtaining the benefit and use of these bequests. In other words, this court ought first to bring itself up to date before deciding what course to follow. Therefore, such a hearing will be held at a time convenient to all parties.
Proceed accordingly.