Charles T. Yeager, 8.
The will of decedent, probated in this court in 1957, contained the following bequests, among others:
Joseph Doktor, a brother of decedent.......... $1,000
John Doktor, a brother of decedent. .•.......... $1,000
Isadore Doktor ............................. $ 300.
These three legatees were, and now are, residents of Poland. Payment of these legacies has been held in abeyance because of the widespread impression, shared by this court until now, that estate legatees or distributees living in Poland would not obtain substantially all the benefits which were intended for them. Poland was-not the only country affected in this manner. Among others which were involved in specific cases in New York courts were Hungary, Russia, Lithuania, the Republic of China and Occupied Norway. (See Matter of Braier, 305 N. Y. 148 [1953] and cases there cited; Matter of Geiger, 12 Misc 2d 1043 [1958] ; Matter of Jedlicka, 12 Misc 2d 1069 [1958].)
Section 269 of the Surrogate’s Court Act as amended in April, 1939 gives the Surrogate’s Court both the authority and, the *224 responsibility of withholding payment of estate funds to a legatee, distributee or beneficiary of a trust wbo would not have the benefit or use or control of the money or other property due him. The same section of the Surrogate’s Court Act authorizes the Surrogate to direct that such funds be set aside for the benefit of such persons as are entitled to the funds or property and not paid out except ‘ ‘ by the special order of the surrogate or pursuant to the judgment of a court of competent jurisdiction.”
In April, 1940 President Franklin D. Roosevelt issued Executive Order 8389 (Code of Fed. Reg., tit. 3, ch. II, Cum. Supp, p. 645) prohibiting certain property transactions with specifically named countries or nationals thereof, and he issued an amendment to that order on June 14, 1941 adding Poland to the list of affected countries, approximately 30. (Executive Order 8785; Code of Fed. Reg., tit. 3, ch. II, Cum. Supp., p. 948.)
As of January 5, 1952 the Treaty of Friendship, Commerce and Consular Rights between the United States of America and Poland was terminated, and closing of all consular offices in the two respective countries resulted. (Code of Fed. Reg,, tit. 3, ch. Ill, 1949-1953 Compilation, p. 1048.)
On February 19, 1951 the United States Treasury issued Circular 655, pursuant to Executive Order 8389, listing 12 countries including Poland, to which the forwarding of Government checks such as Social Security and Veterans’ Pension was forbidden.
In fact, it was not until November 7, 1956 that Poland itself removed the prohibition against Polish nationals possessing foreign funds, effective from February 11, 1957.
A change in this series of events occurred on June 7, 1957 when Treasury Circular 655 was amended by deleting Poland. Thus it became legal, after May 2, 1958, to resume the sending of Federal checks to Poland. It was noted by the Court of Appeals in the Braier case that local and State courts have the right to rely on Federal regulations and policy concerning conditions in foreign countries based on sources of information which are available only to departments of the Federal Government.
However, it remained for State courts and judges to deal with each individual case or estate, for the Federal Government’s action did not automatically apply to persons involved in estates.
Having closely followed events in this field, and having conferred from time to time with prominent Polish-Amerieans in Erie County — attorneys, businessmen and clergy, and being impressed with reported changes of an encouraging nature, I *225 arranged for and held a hearing in this particular case on February 17, 1959. In addition to documentary evidence supporting the ‘ ‘ unfreezing ’ ’ of funds due nationals of Poland, I took the testimony of witnesses who had visited and travelled throughout Poland in 1957 and 1958.
It appears that the rate of exchange between Polish and American currency is now six times more favorable than it was a few years ago. It also appears that, if the Polish national elects to take dollar credits in the Bank “ Pekao ” (also referred to as P. K. 0.), which he may if he wishes, it is possible for him to purchase goods either for his own use or for sale on the free market with great consequent advantage as compared with receiving Polish currency. Whichever choice is made, the law of Poland exempts these estate benefits from all Polish taxes, including inheritance taxes.
After due deliberation, and in view of the great improvements in this field, I have reached the conclusion that the three above-named nationals of Poland who are legatees in the will of decedent will have the benefit or use or control of their bequests, and accordingly I direct payment to their attorney in fact, the Polish Consul General.
Submit decree on notice.