In the Matter of the Estate of HYMAN LANDAU, Also Known as CHAIM LANDAU, Deceased.

Surrogate's Court, Kings County, November 28, 1939.

652

*Thomas J. Snee*, for William V. Elliott, public administrator, petitioner.

·*Charles Recht* [*Isidore Kantrowitz* of counsel], attorney *pro se* as attorney in fact for Frieda Haimovna Gomelskaya, sole distributee.

*A. Lionel Levy*, special guardian for unknown distributees.

*John J. Bennett, Jr., Attorney-General* [*Robert P. Beyer* and *Francis J. Cronin, Assistant Attorneys-General,* of counsel], *amicus curiæ.*

WINGATE, S. The Attorney-General of the State of New York has pressed in the present proceeding the obligation of this court to direct payment to the city treasurer pursuant to section 269 of the Surrogate's Court Act, of the distributive share of a national and citizeness of the Union of Soviet Socialist Republics, now residing in the city of Konotop, Province of Chernigov, in the territory formerly known as Russia.

This person is represented in the present proceeding by an attorney in fact, here resident, who has asserted a right to receive this distributive sum. The execution of the document purporting to evidence his authorization is stated to, be attested by "People's Judge, Gurvich," and his authority authenticated by Citizen Dybchenko, and the regularity of the foregoing certified by Acting Chief I. Mikhailov, of the People's Commissariat for Foreign Affairs.

In *Matter of Weidberg* (172 Misc. 524) and in *Matter of Blasi* (Id. 587) this court had occasion to pass upon the applicability of the 1939 amendment to section 269 of the Surrogate's Court Act to distributive shares of estates belonging to German and Italian nationals respectively, concluding that its requirement for initial deposit with the city treasurer should meet with compliance in respect of the former, but not of the latter. The issue here propounded is as to whether the treatment of the moneys due to Soviet nationals should correspond with that of Germans or of Italians.

It was pointed out in the *Blasi* case (*supra*) that the *Weidberg* result was predicated upon three premises, namely, *first,* that there was no controlling law which compelled payment to the Consul; *second,* that there were reasonable grounds for belief that, if paid,

the distributees would not have the benefit of the money; and *third*, that an obligation was imposed upon the court by the 1939 amendment to section 269 of the Surrogate's Court Act to direct deposit with the city treasurer in situations in which an affirmative factual finding was attained that the distributees would not have the benefit of the money.

The facts underlying the present controversy differ from those present in both of the previous cases by reason of the circumstance that here claim is not made by a Soviet Consul pursuant to treaty rights. Indeed, no such claim would be capable of presentation since there is no treaty in existence between the United States and the Soviet Union. The present claimant is a mere attorney in fact of the Soviet national.

Passing for the moment this feature of the situation, the primary inquiry is as to whether, were the money to be paid over, the " distributee * * * would * * * have the benefit or use or control of the money or other property due him," within the contemplation of section 269 of the Surrogate's Court Act.

It is a matter of common knowledge that private ownership of property has been abolished in the Soviet Union, with the result that none of its nationals there resident is permitted by its laws to have the personal control of any property, which is deemed to belong solely to the State. In other words, there is here presented the precise situation contemplated in the note to the amendment to section 269 at the time of its enactment, to the remedy of which the law was passed that " transmission or payment to a beneficiary, legatee, or other person resident in a foreign country might be circumvented by confiscation in whole or in part." So far as Russian nationals are concerned, such confiscation by and for the use of the government would be of the fund in its entirety and this is not altered by the indication in a current congressional inquiry that it would be used by the agencies of the Soviet government in this country to attempt to undermine our institutions and to sabotage our industries.

The situation, therefore, presents an even stronger case against direct distribution, than that which existed in the *Weidberg* case (*supra*). There it was " ' contingently possible ' that the sums due the distributees would be subject to confiscation;" here it is certain on the reiterated public statements of the responsible heads of the government of the Soviet Union themselves.

The effect on the composite situation of the presence of the power of attorney remains for evaluation. The observation made respecting the power of attorney in the *Weidberg* case (*supra*) is equally applicable here. " An inevitable implied term of this, and every

other, power of attorney is that it confers upon the donee only such authority as may be permissible of exercise under the laws of the place in which action thereunder is contemplated."

This principle is an inevitable sequence of any concept of the sovereignty of an independent State. As was stated by the United States Supreme Court in *The Kensington* (183 U. S. 263, 269): " It is true, as a general rule, that the *lex loci* governs, and it is also true that the intention of the parties to a contract will be sought out and enforced. But both these elementary principles are subordinate to and qualified by the doctrine that neither by comity nor by the will of contracting parties can the public policy of a country be set at naught." To this may be added reiterated statements of the Court of Appeals " that a court will not enforce a contract though valid where made if its enforcement is contrary to the policy of the forum " (*Straus & Co., Inc.*, v. *Canadian Pacific R. Co.*, 254 N. Y. 407, 414), and that " where the Legislature of the State, in which a right or privilege is claimed on the ground of comity, has by its laws spoken upon the subject of the alleged right, the tribunals are not at liberty to search for the rule of decision among the doctrines of international comity, but are bound to adopt the directions laid down by the political government of their own State." (*Lemmon* v. *People*, 20 N. Y. 562, 602. See, also, *People* v. *Martin*, 175 id. 315, 320; *Russian Reinsurance Co.* v. *Stoddard*, 240 id. 149, 163.)

" The power to determine what the policy of the law shall be rests with the Legislature within constitutional limitations, and when it has expressed its will and established a new policy, courts are required to give effect to such policy." (*Straus & Co., Inc.*, v. *Canadian Pacific R. Co.*, 254 N. Y. 407, 413; *South & Central American Commercial Co., Inc.*, v. *Panama R. R. Co.*, 237 id. 287, 291.)

In the present connection, the Legislature by its enactment of chapter 343 of the Laws of 1939, amending section 269 of the Surrogate's Court Act, has declared the policy of the State to be that no payment, other than to the individual distributee, shall be made from the assets of an estate, in which there appears to be a reasonable possibility that he will not receive the benefit thereof.

As pointed out in the *Weidberg* opinion, this deprives him of no right, since the money is always available to him and is his for the asking at any time that reasonable assurance is forthcoming that he, and he alone, will receive it. This statute, far from constituting an impairment of his rights, was designed to be, and is, in fact, a valuable protection thereof.

The attorney in fact, furthermore, possesses no personal rights which are in any way impaired by the enforcement of the statutory mandate, for the reasons which were developed in the *Weidberg* opinion. As was allowed in that case, he will be accorded a reasonable opportunity to seek remuneration pursuant to the provisions either of section 231-a or section 231-b of the Surrogate's Court Act for such services as he may have rendered up to the present time. Sixty days will be accorded for this purpose.

Upon the expiration of such period, a decree will be entered directing payment to the city treasurer of the net distributive share here in question, unless in ᶠthe interval some demonstration be made that the sum to which the distributee is entitled is capable of payment to her individually, without danger of confiscation or diversion, either in whole or in part.

Proceed in conformity herewith.