John D. Bennett, S.
This application seeks to (1) make payments to distributees in Hungary, and (2) authorize payment to an attorney in fact who relies on an alleged assignment of one fourth of the fund deposited to the credit of the Hungarian distributees. Both applications for relief are denied.
(1) In Matter of Herz (7 Misc 2d 217, 218) this court said: 1 ‘ The sums that are now or may be payable out of principal or income to the residents of Hungary will be paid into court' pursuant to section 269 of the Surrogate’s Court Act. No new facts are presented in the papers which should cause this court to reach a determination differing from that reached in Matter of Siegler (284 App. Div. 436) and Matter of Braier (305 N. Y. 148). Recent events in Hungary have not been reassuring so as to render it likely that the beneficiaries would have the benefit, use or control of the property in question. The letter of the Department of Justice dated May 29, 1956 annexed to the petitioner’s brief is ordered filed, as are the letters of the Department of Justice dated May 7, 1957, of the Treasury Department dated May 29,1957 and of the Department of State dated June 4, 1957, the last three of which were received in answer to inquiries from the court.”
This court finds the situation now even less reassuring by reason of events in Hungary which have within the last few weeks drawn condemnation from responsible governments throughout the world. This court does not believe it likely *1044 that the beneficiaries would have the use or control of the property constituting the subject matter of the application.
(2) The courts do not favor purported assignments of funds payable to iron-curtain country nationals and have labeled them attempts to circumvent section 269 of the Surrogate’s Court Act. In a similar situation involving a purported assignment of the share of foreign distributees resident in the Russian sector in the city of Berlin, Germany, Surrogate Rubenstein said in Matter of Perlinsky (202 Misc. 351, 359):
‘1 Heretofore, various efforts have been made by those representing distributees in the Soviet dominated areas to have the funds released from the control of the Surrogate. Matter of Braier (supra) is an example; another is Matter of Alexandroff (183 Misc. 95) where Surrogate Foley noted newly discovered theories contrived by ingenious attorneys. A third such example is Matter of Getream (200 Misc. 543) where Surrogate Hazleton had this to say at page 544: ‘ Since Hungary is a member of this bloc of communist captive countries, this court would consider sending money out of this country and into Hungary tantamount to putting funds within the grasp of the Communists. (Matter of Yee Yoke Ban, 200 Misc. 499.) ’ Surrogate Hazleton then continued: ‘ To circumvent this, there has been seized upon the clever device of having the national of the captive country, as in this proceeding, execute a power of attorney to a national of the United States, authorizing the attorney in fact to receive the moneys inherited by the one behind the Iron Curtain. Under such circumstances, could this court be confident that its order would not be defeated by the funds ultimately percolating in a roundabout way into the country behind the Iron Curtain! I am not sufficiently naive to accept the assurance that this could not happen.’
“ It may be just possible that some of these powers of attorney have been forwarded to closely related American nationals by officials of the country to which money may not be remitted together with a covering letter, which, perhaps, might contain a hint such as ‘You are kindly requested to transfer the sums deriving from the estate to your brother as soon as possible,’ or some other equally diplomatically couched ‘ request ’.
‘ ‘ If the court were to recognize the alleged assignment herein, cases such as Matter of Braier (supra) would be set at naught.”
Proceed accordingly.