Harry G. Herman, S.
The law firm, of Wolf, Popper, Boss, Wolf & Jones, as attorneys in fact for alien nonresident distributees of this decedent, residing in Bulgaria, requests that the distributive shares of said distributees be paid directly to the attorneys in fact for transmission to Bulgaria and that said shares not be deposited with the Commissioner of Finance of Westchester County, in view of the removal of Bulgaria from Treasury Department Circular No. 655, which prohibits transmittal of Federal funds to the countries listed therein.
In support .of its endeavor to resist application of section 269-a of the Surrogate’s Court Act, the attorneys in fact filed the affidavit of David ¡Sloane, Esq., sworn to on February 5, 1964, to which were appended photocopies of a letter from John 0. Halby, Acting Assistant General Counsel, Treasury Department, and Supplement 14 to Treasury Department Circular No. 655.
The attorneys in fact urge that since the United States has removed Bulgaria from Treasury Department Circular No. 655, which prohibits the sending of United States Government checks and warrants to persons who are nationals of and residents in the countries named therein, this is proof that the legatee or a distributee of a decedent’s estate will have the *235 benefit or use or control of the money due him, within the meaning of section 269-a of the Surrogate’s Court Act.
Section 269-a of the Surrogate’s Court Act provides:
‘ ‘ § 269-a. Deposit in court for benefit of legatee, distributee or beneficiary. 1. Where it shall appear that a legatee, distributee or beneficiary of a trust would not have the benefit or use or control of the money or other property due him, or where other special circumstances make it appear desirable that such payment should be withheld, the decree may direct that such money or other property be paid into the surrogate’s court for the benefit of such legatee, distributee, beneficiary of a trust or such person or persons who may thereafter appear to be entitled thereto. ¡Such money or other property so paid into court shall be paid out only by the special order of the surrogate or pursuant to the judgment of a court of competent jurisdiction.
“ 2. In any such proceeding, where it is uncertain that an alien legatee, distributee or beneficiary of a trust, not residing within the United States or its territories, would have the benefit or use or control of the money or other property due him, the burden of proving that such alien legatee, distributee or beneficiary of a trust will receive the benefit or use or control of the money or other property due shall be upon him or on the person or persons claiming from, through or under him.”
Section 269-a was enacted by chapter 975 of the Laws of 1960, effective April 28, 1960. Previous to that date the first paragraph of the present section 269-a appeared as the concluding paragraph of section 269 of the Surrogate’s Court Act, to which it was added as an amendment by chapter 343 of the Laws of 1939, effective April 24, 1939, having been proposed by the Executive Committee of the New York State Surrogates’ Association. An explanatory note, appended to the original bill, stated: ‘ ‘ The purpose of the amendment is to authorize the deposit of monies or property in the Surrogate’s Court in cases where transmission or payment to a beneficiary, legatee, or other person resident in a foreign country might be circumvented by confiscation in whole or in part. The amendment authorizes the impounding of the fund by the Surrogate to await the time when payment can be made to the beneficiary for his own benefit, use and control.” (Matter of Weidberg, 172 Misc. 524, 527.)
The benefieient purposes of section 269-a have been applied generally to protect the interests of nationals of the ‘‘ Iron Curtain” countries (see Matter of Marek, 11 N Y 2d 740 [1962], *236 app. dsmd. for want of a substantial Federal question sub nom. Ioannou v. New York, 371 U. S. 30 [1962]; Mutter of Geiger, 7 N Y 2d 109 [1959]; Matter of Siegler, 284 App. Div. 436).
The courts continue to recognize that in the absence of proof by competent evidence that an alien resident in an ‘ ‘ Iron Curtain” country will receive the benefit or use or control of funds of a decedent’s estate sent to him there, and where it has not been established that the rate of exchange offered is not confiscatory when compared to the market place rate of exchange, section 269-a should be applied, and the nonresident alien’s share should be deposited (Matter of Frederick, N. Y. L. J., Jan. 16, 1964, p. 14, col. 7 [Cox, S.]; Matter of Geiger, N. Y. L. J., Jan. 8, 1964, p. 15, col. 4 [Cox, S.]; Matter of Greenberg, N. Y. L. J., June 16, 1964, p. 14, cols. 3-4 [Cox, S.]).
The fact that Bulgaria and other “ Iron Curtain ” countries were listed in Treasury Department Circular No. 655 was a reason justifying a determination by the court that a legatee or distributee might not have the benefit or use or control of the fund and that section 269-a should be applied (Matter of Braier, 305 N. Y. 148 [1953], app. dsmd. for want of a substantial Federal question sub nom. Kalmane v. Green, 346 U. S. 802 [1953]). Removal of a country from this list, however, may be in furtherance of the political and diplomatic objectives of the United States. It is not a finding by the United' States that payees of Federal funds will actually receive the funds at full value. It is not, nor could it be, a determination that Bulgarian legatees or distributees will receive the benefit or use or control of funds from decedents’ estates. The court must make its own independent determination as to this (Matter of Doktor, 18 Misc 2d 223, 224; Matter of Klein, 203 Misc. 762, 765), and such a determination cannot be delegated to any other authority or agency (Matter of Schmiedl, N. Y. L. J., March 24, 1964, p. 14, col. 3 [Di Falco, S.]).
The attorneys in fact inaccurately contend that Matter of Braier (supra, p. 158) enunciated a rule that if a country is removed from the Treasury Department List, the Surrogate must permit distribution of estate funds to the alien legatees and distributees. What the Court of Appeals actually stated in Braier (p. 158) was that in that case the Surrogate had determined independently of the position of the United States G-overment that “ the probability was that, even if the funds had been transmitted to Hungary, the legatee would not have received them ” and that “ [&]s soon as conditions in that country change and the laws of our government permit unblock *237 ing of the funds belonging to an Hungarian national — the surrogate will undoubtedly order the funds withdrawn from the city treasury and transmitted to the legatee ” (emphasis supplied).
The reasons for the enactment of section 269-a have been explained in detail in Matter of Weidberg (supra, pp. 527-528); Matter of Bold (173 Misc. 545, 547) and Matter of Wells (204 Misc. 975, 977-978). Since uncertainty exists as to whether a claimant in an “Iron Curtain” country would have the benefit or use or control of the fund due him, unless the claimant meets his burden of proof and satisfies the court that he will have “benefit or use or control”, a deposit under section 269-a will be decreed.
Annexed to supplementary affidavits submitted by the attorneys in fact are letters and price lists and a certificate of the Ministry of Foreign Affairs, Sofia, Bulgaria, which are clearly objectionable as hearsay. This so-called evidence would be inadmissible at a hearing, and is rejected by the court. Moreover, even if such were admissible, they would not show that the distributees would receive the full market value of their distributive shares. The hearsay certificates of the Bulgarian government are self-supporting declarations (cf. Matter of Siegler, supra, pp. 439 — 440). The affidavit of David Sloane, Esq., sworn to on May 4, 1964, is clearly objectionable as at least double hearsay, and this too begs the question of whether the Bulgarian distributees get the full value of their legacies. No competent testimony has been offered as to the applicable tax laws of Bulgaria or that the distributees would receive the market place, as compared with the official, rate of exchange, so that their shares would not be partially confiscated by the foreign government.
Moreover, even if the court were not to reject as hearsay the press release and agreement attached to Mr. Sloane’s affidavit of February 5, 1964, these would indicate that Bulgaria was removed from the Treasury Department List as part of an agreement settling claims of United States nationals arising out of war damage, nationalization of property, and financial debts in return for the unblocking by the United States Government of assets of natural persons residing in Bulgaria. The agreement made no findings or commitments with respect to decedents’ estates, which matters are controlled by the law of the various States in the absence of an over-riding treaty (Kolovrat v. Oregon, 366 U. S. 187 [1961]; Matter of Braier, supra; Matter of Bold, supra).
*238 It is possible that Bulgarian beneficiaries of decedents’ estates actually do receive the benefit or use or control of funds due them, and that their shares are not subject to a confiscatory rate of exchange. But as Surrogate Dillon said in Matter of Buszta (18 Misc 2d 716, 717): ‘ All of these things may be true. But they are not satisfactorily established by the papers now before the court, which consist of copies of alleged press releases and a letter from the State Department of Insurance. Copies of two purported judicial determinations are likewise furnished, but this court had no knowledge of the evidence on which they were based.”
Other factors which may furnish a clue as to whether the distributees herein would have the benefit or use or control of their distributive shares in this estate are whether the distributees had any choice as to whether they wished to be represented by the attorney in fact herein and whether the funds will, in fact, reach them (cf. Matter of Perlinsky, 202 Misc. 351, 354, 359, 360; Matter of Luberg, 19 A D 2d 370, 373-374; Matter of Polubatko, 21 A D 2d 735 [4th Dept., May 14, 1964]).
In the instant case the court required the attorneys in fact to file the affidavit required by rule 26 of its rules “as to the form, content, manner of execution and the conditions attached to the recording of such power of attorney.” The affidavit of David Sloane, Esq., an associate in the Iuav firm herein named as attorneys in fact for the Bulgarian distributees, sworn to on April 29, 1964, establishes that the attorneys in fact were not the independently chosen representatives of the donors of the poAvers of attorney but were chosen by “Law Office for Foreign Legal Matters of-Sofia, Bulgaria”, which is represented to the court by Mr. Sloane as “ a law firm” (ef. discussion of their Moscow forwarders, “ Iniurcolleguia ”, in Matter of Mitzkel, 36 Misc 2d 671, and Matter of Kapocius, 36 Misc 2d 1087), and that the attorneys in fact have agreed to act for said ‘ Law Office for Foreign Legal Matters ” for 20% of the net amount due Bulgarian nationals, of which 4% would be paid to the Bulgarian forwarders.
It has not been established to the satisfaction of the court that a distributee or legatee of a New York estate resident in Bulgaria will get the benefit or use or control of the moneys due him. Special circumstances, as hereinabove discussed, make it appear desirable that payment should be withheld (Surrogate’s Ct. Act, § 269-a; Matter of Perlinsky, supra; Matter of Polubatko, supra; cf. Matter of Weidberg, supra). The application of the attorneys in fact that the shares of the Bulgarian distributees be paid to the attorneys in fact *239 for transmission to Bulgaria is denied, without prejudice to a renewal of such application in a subsequent proceeding at such time as it can be demonstrated that conditions in Bulgaria justify the belief that the distributees will receive the full value of their distributive shares (Matter of Braier, sufra).