90 N.J. Super. 91 (1966)
216 A.2d 258
IN THE MATTER OF THE ESTATE OF VIRGINIA BIRKNER, DECEASED.
Superior Court of New Jersey, Passaic County Court, Probate Division.
Decided January 7, 1966.
*93 Sullivan & Sullivan & Woods, attorneys for plaintiffs (Mr. Arthur J. Sullivan Jr. appearing).
Leon Klein, guardian ad litem for several minors.
Herman D. Edelson, guardian ad litem for certain unknown and unborn descendants.
JOHNSON, J.C.C.
This is a proceeding wherein plaintiffs-executors seek a judicial settlement of their first and final accounting and wherein plaintiff-trustee seeks instructions concerning certain provisions of decedent's last will and testament.
There have been no objections filed to the account, and the court has reviewed the same and finds no reason for not allowing the account as stated. The requests for allowances *94 have also been reviewed and will be allowed pursuant to a separate order filed herein. The sole question for determination is the manner of distribution of the residuary estate under the paragraph Fifth of decedent's will. Under that paragraph the executors are to transfer and deliver the entire residuary estate to the trustee to be held in trust for the following uses and purposes:
1. To pay $250 quarter-annually, from and after the date of testatrix' death, to her daughter, provided she survives the testatrix.
2. To pay $100 quarter-annually, from and after the date of testatrix' death, to each child of said daughter who survives testatrix, but if such grandchild shall predecease testatrix leaving issue, the payment which the parent would have received is to be paid to his or her children per stirpes.
3. Upon the death of testatrix' daughter, the amount of payments directed to be made quarter-annually to the grandchildren shall be $250 each.
4. On the death of any such grandchild the quarter-annual payment to such grandchild shall be made to his or her issue, per stirpes.
5. On the death of the survivor of the children of said daughter, then the trust shall terminate and the remaining principal and any accumulated income shall be paid over to the living issue of the grandchildren, per stirpes.
No payments have been made under the trust provisions because the plaintiffs claim:
(a) There is an uncertainty as to whether the beneficiaries would receive the benefit, use or control of such payments since such beneficiaries reside in Czechoslovakia;
(b) There is an uncertainty as to whether, upon settlement of the account of the executors, distribution should be made to the beneficiaries of the trust in lump sums, accumulated quarterly, from the date of decedent's death to the present time;
(c) The executors are uncertain as to whether or not they should pay over the same to the trustee or should pay over *95 the same to this court in accordance with the provisions of N.J.S. 3A:25-10; and
(d) There is an uncertainty as to the validity of the trust since it might be deemed to violate the rule against perpetuities.
Decedent died in Passaic, N.J. on May 13, 1963, leaving as her heirs at law and next of kin the following persons: her daughter Katarina S. Sedlakova, aged 51; her daughter's five children; a son Ladislav Sedlak, aged 33 and the father of two minor children, Maria Sedlakova, aged 7, and Iveta Sedlakova, aged 3; a daughter Marinna S. Slosserova aged 30 and the mother of three minor children, Maria Slosserova, aged 11, Eva Slosserova, aged 10, and Jana Slosserova, aged 9; a daughter Victoria S. Baranova, aged 24 and the mother of a minor child Pavol Baran, one year of age; a son Engen Sedlak, aged 21, and a daughter Katarina Sedlakova, aged 17.

Transmission of funds to beneficiaries residing in Czechoslovakia
N.J.S. 3A:25-10 provides
"Where it shall appear that a legatee, next of kin or beneficiary of a trust would not have the benefit or use or control of the money or other property due him, or where other special circumstances make it appear desirable that such payment should be withheld, the court to which the fiduciary is accountable * * * may direct that such money or other property be paid into such court for the benefit of such legatee, next of kin, beneficiary of a trust, or such person or persons who may thereafter appear to be entitled thereto. * * *"
It is the obligation of our courts, under this statute, to make sure that funds left to an individual or institution behind the Iron Curtain can safely be transmitted to the beneficiary. There must be convincing proof that the distributive shares will reach their proper destination. We may not turn away from the common knowledge of obstacles which stand in the way of that desired achievement. Brizgys x. County Treasurer of Union Co., 84 N.J. Super 485 (App. *96 Div. 1964), certification denied Brizgys v. Styler, 43 N.J. 270 (1964).
There are federal restrictions governing the transmission of funds to countries behind the Iron Curtain, including Czechoslovakia, which restrictions do not apply to private funds but which indicate to this court that those desiring to transmit private funds should use extreme caution. 31 Code of Federal Regulations, § 211.3(a) (Supp. 1962) The Appellate Division in the Brizgys case, supra, stated that the distinction was unimportant. The important factor is whether there is reasonable assurance that the distributee will actually receive the monies to which he is entitled. For the answer to this we cannot be guided to any great extent by what is done in a different country from the one with which this court is presently concerned. Although the Secretary of the Treasury has listed several countries in the above-mentioned regulations, each country listed therein has its own peculiar policies and each case must be determined according to those policies and the facts existing in each case. Research reveals no New Jersey case involving the application of this statute to legacies intended for citizens and residents of Czechoslovakia as we have in the case at bar.
On March 24, 1965 oral testimony was presented before the then Passaic County Assignment Judge Kolovsky. Effective September 13, 1965, he was assigned to the Appellate Division and the case was reassigned to this court for disposition. A transcript of the testimony taken before Judge Kolovsky was made and has been considered by this court as a part of the record, together with the oral proofs taken December 13, 1965 before this court as well as the depositions of Katarina S. Sedlakova taken before the United States Consul at Prague, Czechoslovakia, on June 9, 1965.
The testimony of Stanley M. Roberts, a vice-president and manager of the International Banking Department of the New Jersey Bank and Trust Company, reveals that standard normal international banking channels are available for the transmission of private funds from persons in the United *97 States to residents of Czechoslovakia. There are no regulations of the United States Government or any of its branches or departments prohibiting such transfers of funds in cash.
The testimony of Dr. Jiri Majsajdr, Third Secretary of the Czechoslovakian Embassy and Chief of the Consular Division in Washington, D.C., among whose duties it is to protect the interests of Czech nationals as these interests might relate to their property, testified that he is a lawyer by profession in Czechoslovakia and is familiar with all regulations and laws concerning the transfer of private funds to Czechoslovakian nationals from foreign countries. He further testified that there are no levies imposed on personal property inherited by Czech nationals, nor are there any inheritance or death duties levied on inheritances of foreign items, provided the decedent was not a Czech national (as is the case here). He also testified as to the procedure to be followed, and explained that the beneficiary has a choice of accepting his legacy in Czech currency at twice the official rate of exchange or accepting his legacy in Tuzex certificates, or taking some in currency and the balance in such certificates. His explanation indicated that since September 1, 1963 nationals of Czechoslovakia, resident in that country, are and have been entitled to receive inheritances and insurance benefits from the United States in 100% Tuzex coupons at 7.17 Tuzex coupons to the dollar. At the same time they have also been and are entitled to receive regular crowns at the rate of 14.34 crowns to the dollar. Most beneficiaries take some Czech currency in order to help them with their everyday living expenses, such as rent, transportation and debts, while the balance is accepted in Tuzex certificates in order to purchase automobiles, refrigerators and the many other foreign-made items which are not readily available on the open market.
The transfer of funds may be accomplished either through commercial bank channels or by the purchase of the Tuzex coupons in this country. The choice is the recipient's. If Tuzex coupons are purchased, there is no agency commission. If bank channels are used, there is a nominal charge for the *98 service, usually about $3 per $1000 but, other than this bank service fee, there are no deductions from the amount forwarded to the Czech heir or beneficiary. He pays no tax and is subject to no other form of charge.
The Tuzex stores are a self-dependent enterprise although the supervision is on the part of the Czech State. They are an arm of the government established in 1957 and under the control of the Ministry of Foreign Trade. There are several of the stores throughout the country, and the purchases may be made directly at the stores or by mail order from their catalogs. The merchandise primarily consists of goods manufactured in Czechoslovakia principally for export, and goods imported from foreign countries. Apart from the availability at the Tuzex stores of items that are difficult to obtain at the regular market without long waiting periods, the prices at the Tuzex stores are comparable to the prices charged in the United States for comparable items.
Tuzex coupons are not legally negotiable but they may be given away as gifts.
It also appears from the evidence and the representations of counsel for plaintiffs that he had, in August and September 1964, forwarded to Katarina S. Sedlakova the proceeds of a $1000 United States Savings Bond, Series E, which was payable to her on the death of decedent owner, together with the proceeds of a $1000 Prudential Life Insurance Company policy of which she was the named beneficiary. This money, totaling $2150.64, was transferred via the Foreign Banking Department of the New Jersey Bank and Trust Company. Thereafter the said Katarina S. Sedlakova wrote to Arthur J. Sullivan Jr., the attorney for said estate, acknowledging receipt of said money and advising that she had used every cent thereof for repairs to her home.
Subsequently her depositions were taken at the American Embassy in Prague, in which depositions she testified that she had received the funds, that she had the use, benefit and control thereof, that the letter she had sent to Mr. Sullivan bore her signature, and that the contents thereof were true.
*99 Although ordinarily little comfort can be obtained from decisions by other courts in matters such as these, since each case must stand or fall on the proofs adduced, there is some guidance which may be used in determining the novel issue here to be decided. The only reported case which has been brought to this court's attention is In re Reidl's Estate, 39 Misc.2d 805, 242 N.Y.S.2d 105 (Surr. Ct. 1963) modified 23 App. Div.2d 171, 259 N.Y.S.2d 217 (App. Div. 1965). This case involved the same issue presented by the case at bar  namely, whether a legacy should be transmitted to a Czechoslovakian beneficiary in view of the provisions of section 269-a of the New York Surrogate's Court Act, which is substantially the same statute as our N.J.S. 3A:25-10.
The Surrogate's Court of Bronx County, in refusing to grant permission to transfer funds to a Czech national, stated:
"Although the court might be impelled from humanitarian motives to permit the executor in this estate to use the Tuzex gift vouchers as a means of paying the legacies to the foreign beneficiaries, this court cannot grant the application because there is no reasonable assurance that there has been compliance with the provisions of § 269-a of the Surrogate's Court Act. Furthermore, it appears to this court that the use of Tuzex gift vouchers could very well be further ingenious attempts by Iron Curtain countries to circumvent § 269-a of the Surrogate's Court Act."
On appeal the New York Appellate Division modified the decree on the law and the facts to permit distribution to the legatees of their respective legacies through the medium of Tuzex certificates. The court stated that "[t]he proof here shows a plan called the Tuzex program which was put in effect in 1958. It was shown that there is an organization in Czechoslovakia called the Tuzex Foreign Trade Organization * * *" through which Tuzex gift vouchers could be redeemed for merchandise without deductions of any kind."
From the proofs submitted herein this court is satisfied that the beneficiaries of the trust created under the last will and testament of Virginia Birkner, deceased, who are *100 resident in Czechoslovakia, will have the benefit, use and control of the entire proceeds to which they are entitled without any deductions therefrom except for reasonable bank transfer charges so long as the present policies of the Czech government continue. Since this trust probably will continue in existence for some time I suggest to the trustee that a review of these policies be made periodically and that verified receipts be obtained from all cestuis que trust each time a payment is made. The funds in question may be transmitted to the Czech nationals in accordance with the other findings in this opinion.

How and To Whom is the Residuary Estate Payable
The sole issue to be resolved is whether the decedent intended that her five grandchildren living at the time of her death were to be the recipients of her bounty, i.e., annuities to each of $400 per annum payable $100 quarterly, or whether after-born grandchildren were included in the provisions of paragraph 2 of article Fifth.
The guardian ad litem for the unknown and unborn children of Katarina S. Sedlakova (daughter of decedent) and the descendants of such children contends that the provisions of decedent's will which are the subject of interpretation here are also for the benefit of grandchildren born after the death of the testatrix and hence entitled to share in the annuities.
The guardian ad litem for the seven minor children and grandchildren contends that the provisions of decedent's will apply only to the children in being at the time of testatrix' death.
The executors and trustee contend that the trust created is for the benefit of those grandchildren living at the time of testatrix' death and should be held valid under the rule against perpetuities.
At the outset it must be determined whether the provisions of article Fifth of the will of the decedent are annuities *101 or payments out of income. In Booth v. Ammerman, 4 Bradf. Surr. 129 (N.Y. Surr. Ct. 1856), an annuity is well described as follows:
"An annuity is a stated sum per annum, payable annually unless otherwise directed. It is not income or profits, nor indeterminate in amount, varying according to the income or profits, though a certain sum may be provided out of which it is to be payable."
An annuity was further described in Commercial Trust Company of New Jersey v. Kohl, 131 N.J. Eq. 233 (Ch. 1942):
"* * * There is a well defined distinction between an income and an annuity. Income arises from the profits after deducting all necessary expenses and charges, and may be uncertain in amount. An annuity is an amount certain directed to be paid absolutely and usually without contingency. * * *" (at p. 242)
See also Steelman v. Wheaton, 72 N.J. Eq. 626, 629 (Ch. 1907).
The pertinent provisions of decedent's will are as follows:
"Fifth: All the rest, residue and remainder of my estate * * * I hereby give, devise, bequeath and appoint to my trustee, * * * in trust nevertheless, for the following uses and purposes: to hold, manage, invest and reinvest the same, to collect the income, and to pay over so much of the net income together with so much of the principal thereof as may be necessary in order to make the following payments from and after the date of my death:
1) The sum of $250 to be paid quarter annually, from and after the date of my death, to my daughter * * * provided my said daughter survives me;
2) The sum of $100 to be paid quarter annually, from and after the date of my death, to each child of my said daughter * * * who survives me * * *."
In applying the above-quoted rule as to what constitutes an annuity to the above provisions of the will, it is clear that testatrix intended the payment of fixed sums, and that these sums should be payable without any abatement in any possible case of deficiency of income. I therefore determine that the above payments to be made are annuity payments.
*102 The question has been raised concerning the intent of testatrix as to the amount of the annuities payable. It is contended by the guardian ad litem of the unborn heirs that it was her intention that the payment to her daughter was to be in the annual sum of $250 payable in four equal quarterly installments, and that the children of said daughter are each to receive $100 per annum payable in four quarterly installments.
To so hold would be to strain the common, ordinary, everyday use of the English language. In the opinion of the court, the language of the will is clear. The entire paragraph must be read in pari materia, and this court is convinced beyond a doubt that the intent of testatrix was for the trustee to pay decedent's daughter $250 every three months, or, in other words, an annual annuity of $1000; and to pay each of the five grandchildren $100 every three months, or to say it another way, an annual annuity of $400.
The guardian ad litem of the unborn children raises the question as to whether the provisions of paragraphs 2 and 3 of article Fifth violate the rule against perpetuities.
There are two classes of beneficiaries involved in this question, namely, the unborn children of testatrix' daughter at the time of testatrix' death, and the issue of any grandchildren not in being at the date of testatrix' death. Both classes fall within the same rule of law relating to perpetuities, however.
The rule against perpetuities, as stated by Professor Gray in The Rule Against Perpetuities (4th ed.) 191, and quoted in Wright v. Renehan, 10 N.J. Super 363, 367 (Ch. 1950), is stated as follows:
"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."
In McGill v. Trust Company of New Jersey, 94 N.J. Eq. 657, 664 (Ch. 1923), modified 96 N.J. Eq. 331 (E. & A. *103 1924), the court amplified and explained the rule in the following language:
"That rule requires that all future interests, legal or equitable, in realty (except dower and curtesy and rights of entry for conditions broken) or personalty, which are contingent and indestructible, must be such as necessarily to vest, if at all, within the term measured by the life or lives of a person or persons in being at the time of the creation of the interest and twenty-one years thereafter; otherwise they are invalid and void." (at p. 664)
More recently, in In re Lattouf's Will, 87 N.J. Super. 137, 142, 143, 144 (App Div. 1965), the above cases were cited for the rule against perpetuities in force in this State.
This court holds that the annuities for the benefit of unborn grandchildren fail for the reason given in In re Lattouf's Will:
"As our cases have uniformly held, a future interest must vest, if at all, within a period measured by a life in being when the interest was created, plus 21 years." (at p. 145)
Hence, only those grandchildren living at the time of the death of the testatrix are eligible to take the annuities.
As to the annuities created for the benefit of the living grandchildren, the court holds them to be valid. The court further holds that the invalid limitation is not an essential part of the general scheme of the gifts under article Fifth of the will, and the several parts of the grant shall be treated as severable. Glock v. Glock, 110 N.J. Eq. 477 (E. & A. 1932); Wright v. Renehan, 10 N.J. Super. 363, 371 (Ch. 1950), and cases therein cited.
So far as the questions raised by plaintiffs as to whether the executors should pay over to the beneficiaries of the trust those quarter-annual payments from the date of death to the present time are concerned, it is the opinion of the court that the duties of the executors are to administer the estate and then to turn over to the trustee all assets remaining in their hands. It is the duty of the trustee to make *104 the payments as required in article Fifth of the will, which payments have accumulated and should now be paid to the respective recipients of the benefits of the trust. These recipients are not technically legatees but cestuis que trust and the executors owe no duty to them, nor are they accountable directly to them nor should any payments be made to them by the executors.
On the question of attorney's fees, let it suffice to say that the court has reviewed the various affidavits of services rendered and is of the opinion that in view of the services rendered by the attorney for the estate and the guardians ad litem, the fees requested by them are modest and will accordingly be allowed as follows:

 To Sullivan & Sullivan & Woods, attorneys ................... $2975
 To Leon Klein, guardian ad litem ............................ 1300
 To Herman D. Edelson, guardian ad litem ..................... 1200

An appropriate form of judgment consistent with the findings herein and consented to as to the form thereof should be submitted.