GERALD A. LAMB, TREASURER *v.* ESTATE OF
THERESA SZABO

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 128865
AT BRIDGEPORT

Memorandum filed October 13, 1967

*Harold M. Mulvey*, attorney general, and *Robert L. Hirtle, Jr.*, and *F. Michael Ahern*, assistant attorneys general, for the plaintiff.

*Webb & Gall*, of Bridgeport, *Berdon, Berdon & Young*, of New Haven, and *Joseph Glass*, of New Haven, for the defendants.

SHEA, J.  Theresa Szabo died on November 1, 1961, a resident of Fairfield, Connecticut.  Under her will, dated March 12, 1958, the residue of her estate was bequeathed in equal shares to Elizabeth Hamosi, a sister of the decedent who resides in Hungary, and to Zsigmond Halasz, a brother of the decedent who resides in the Ukraine, a state of the Union of Soviet Socialist Republics.  The account of the executor indicated that the sum of $6590.45 for each of these legatees remained on hand for distribution as of June 20, 1966.  After a hearing, in which the state treasurer participated as a statutory trustee under the provisions of General Statutes § 45-278, and in which Connecticut counsel appeared in behalf of a New York law firm which claimed to be the attorney in fact of the two legatees, the Probate Court for the district of Fairfield ordered distribution of one-third of each legacy to the named legatees.  In entering such an order, the Probate Court overruled the claim of the state treasurer that the funds should be paid to him to be held for the benefit of the legatees in accordance with the provisions of General Statutes § 45-278.  The treasurer has appealed from this order.

Upon the appeal, a stipulation was filed reciting the record before the Probate Court and waiving

the right to present additional evidence. It appears, therefore, that the evidence upon which the Probate Court acted is the same as that before this court.

General Statutes § 45-278, sometimes referred to as the "iron curtain statute," reads as follows: "Property due person residing outside United States. When it appears that a legatee, distributee, cestui or beneficiary not residing within the territorial limits of the United States of America or any territory or possession thereof would not have the benefit or use or control of property due him and that special circumstances make it desirable that delivery to him be deferred, any court of probate may order that such property be converted into available funds and paid to the state treasurer, to be invested by him at his discretion and, together with any proceeds thereof, to be held subject to such further order as such court may enter, provided the reasonable fees, as allowed by such court, of the attorney for any such legatee, distributee, cestui or beneficiary whose funds are payable to the state treasurer hereunder shall be considered a lien thereon and shall be paid by the fiduciary having such funds in charge to such attorney prior to payment to the state treasurer."

The Probate Court construed the statute as imposing the burden of proof upon the state treasurer to show that the legatees would not have the "benefit or use or control" of their legacies. It was also concluded, however, regardless of where the burden lay, that the evidence established that the legatee in the Ukraine would have the "benefit or use or control" of his legacy. The same conclusion was reached in regard to the legatee in Hungary, largely upon the basis of past experience of the court in ordering distribution of estates to recipients living in that country. No evidence was pre-

sented by either party concerning the law of Hungary in respect to inheritance or the actual practice followed.

## I

The function of the Superior Court in this appeal is not to determine afresh the issues already decided by the Probate Court but to review the action of the Probate Court to see whether or not the discretion vested in it has been abused. "In any appeal from probate the Superior Court is exercising a limited statutory jurisdiction. . . . It is true that in some types of probate appeal, such, for instance, as an appeal from a decree admitting a will to probate, the Superior Court not only hears all relevant and material evidence but enters its judgment affirming or reversing the probate decree without regard to, or consideration of, the action which the Probate Court had taken. . . . In certain matters, however, the Probate Court is granted discretion as to the action it should take. In other words, primary jurisdiction to exercise a discretion is vested in it. In such instances, the 'Superior Court, on appeal, could go no further than to determine whether that discretion had been legally and reasonably exercised.'" *Baldwin* v. *Tradesmens National Bank,* 147 Conn. 656, 659. "[T]he Superior Court cannot exercise a discretion vested in the Court of Probate; it can only review the exercise of that discretion to determine whether it has been reasonably and legally exercised. . . . The Superior Court cannot exercise a primary jurisdiction which by statute is reposed in the Courts of Probate." *Reiley* v. *Healey,* 122 Conn. 64, 79.

It has been held expressly that the application of the provisions of General Statutes § 45-278 involves the exercise of discretion by the Probate Court. "As we have indicated, the statute vests in

the Probate Court primary jurisdiction to determine whether a resident of a foreign country would receive the use and benefit of a legacy distributed to him, and on appeal from that court the Superior Court could go no further than to determine whether that discretion was legally and validly exercised." *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 554.

Therefore, regardless of the result which might be reached by this court upon the evidence presented if the matter were being heard ab initio, the decision of the Probate Court must be affirmed unless it was so unreasonable as to constitute an abuse of discretion.

## II

The Probate Court construed the statute as imposing the burden of proof upon the state treasurer, since he opposed the distribution. This conclusion is consistent with the language of the statute: "When it appears that a legatee . . . would not have the benefit or use or control of property due him and that special circumstances make it desirable that delivery to him be deferred . . . ." § 45-278. "It is an elementary rule that whenever the existence of any fact is necessary in order that a party may make out his case or establish his defense, the burden is on such party to show the existence of such fact." *Citizens Assn.* v. *Bridgeport,* 84 Conn. 383, 387. If the legatees involved had lived in some more friendly country, presumably the state treasurer would not claim that such legatees would have to establish affirmatively that they would have the benefit and control of their legacies.

In the case of *Nikitiuk* v. *Pishtey,* supra, relied upon by the plaintiff, it was held that the burden of proof rested upon the heirs who were petitioning to modify an earlier decree of the Probate

Court. This decree rested upon a finding of the conditions required for application of the statute. The reasoning applied in allocating the burden of proof to the party seeking to establish facts justifying the relief claimed in that case is also pertinent here. For the plaintiff to have prevailed, it was essential that it "appear" that a legatee residing in the Ukraine or in Hungary "would not have the benefit or use or control of property due him and that special circumstances make it desirable that delivery to him be deferred." § 45-278. In the absence of any evidence, the Probate Court could not find the circumstances required for invocation of the statute. " 'The burden of proof in any proceeding lies at first on that party against whom the judgment of the court would be given if no evidence at all were produced on either side.' " *Wetherell* v. *Hollister*, 73 Conn. 622, 626 (quoting Stephen, Digest of Evidence, art. 95); *Nikitiuk* v. *Pishtey*, supra, 552. The conclusion of the Probate Court that the burden rested upon the plaintiff was in accordance with these principles.

In none of the cases from other states, with similarly worded statutes, is the problem of burden of proof discussed in any depth. *In re Birkner's Estate,* 90 N.J. Super. 91; *Brizgys* v. *County Treasurer,* 84 N.J. Super. 485; *Wanson Estate,* 419 Pa. 109; *Bokey Estate,* 412 Pa. 244; *Belemecich Estate,* 411 Pa. 506. In New Jersey, it appears that a statement of legislative purpose was attached to the bill when the statute was enacted which indicated that it should apply where payment to a foreign legatee "might" be circumvented by confiscation. N.J. Rev. Stat. 3:26-18; N.J. Laws 1940, c. 148. This notation was relied upon to support the application of the statute where it is "contingently possible" that the legacy would be subject to confiscation in whole or in part. *In re Url's Estate,* 7 N.J. Super. 455. In

New York, a similar statement of legislative purpose accompanied the bill (Laws of 1939, c. 343), and this was relied upon by some of the surrogate courts to require a construction that a contingent possibility of confiscation would bring the statute into play. *Matter of Weidberg,* 172 Misc. 524. A somewhat different view was followed by other surrogate courts. *Matter of Blasi,* 172 Misc. 587; *Matter of Wells,* 204 Misc. 975, 983. In 1960, the New York statute was amended to impose the burden of proof upon an alien beneficiary where it is uncertain that he will have the use, benefit or control of his distributive share. N.Y.S.C.P.A. § 2218. A similar amendment to General Statutes § 45-278 was introduced in the 1967 General Assembly but was not enacted. S.B. 323 (referred to general law committee).

The legislative history of the enactment of § 45-278 reveals nothing of significance in respect to the legislative intention except as it is expressed in the statutory language. Hearings before the Joint Standing Committee on Judiciary, 1951 Sess., vol. 2, p. 451; 4 H.R. Proc., pt. 5, 1951 Sess., pp. 1812–13. No statement of legislative purpose was attached to the bill. Sub. for H.B. 1654, 1951 Sess.

The conclusion of the Probate Court that the statute placed the burden of proof upon the state treasurer to prove that the legatees would not have use, benefit or control of their legacies was correct.

### III

From the evidence presented at the hearing, the Probate Court found that the Ukrainian legatee would receive his legacy; that he could either convert it into Russian currency or leave it in American dollars; that American money can be used to purchase consumer goods in special foreign cur-

rency stores at prices more advantageous than the official rate of exchange, or can be used for travel outside Russia; and that the funds, Russian or American, can be transmitted by will or by intestacy. These findings were supported by the testimony of a specialist in Russian law who testified that he had personally investigated the practices followed in Russia in distributing foreign estates to Russian citizens.

The Probate Court was not bound to credit the testimony of the expert witness who testified in behalf of the state treasurer.

Although the probate judge properly took judicial notice of the treasury regulation (§ 211.2 [1966]) pertaining to the remittance of funds of the United States government, he was not bound to draw the inference that the conditions referred to in the regulation would deprive a legatee of the use, benefit or control of his distributive share of an American estate. It is to be noted that the removal of certain countries from the list proscribed in the regulation has not been deemed of sufficient weight to establish that a beneficiary in such a country would have the requisite use, benefit or control. *Matter of Draganoff*, 43 Misc. 2d 233, 236, adhered to after reargument, 46 Misc. 2d 167. "Removal of a country from this list, however, may be in furtherance of the political and diplomatic objectives of the United States." *Matter of Draganoff*, 43 Misc. 2d 233, 236. The Probate Court may have reasoned conversely that the listing of a country in the regulation had similar objectives and discounted the probative value of the regulation accordingly.

It is true that the treasury regulation has been relied upon in many cases to support the conclusion that foreign legatees would not have use, benefit or control of their legacies. *Petition of Mazurowski,*

331 Mass. 33; *Matter of Braier,* 305 N.Y. 148; *Belemecich Estate,* 411 Pa. 506. This is far from holding that the regulation must be accorded such weight that it must prevail in every case regardless of the evidence produced to the contrary.

It is to be noted that the surrogate courts in New York have reached divergent results in cases involving Russian beneficiaries, depending upon the evidence produced in a particular case. The reported cases under the statute had uniformly withheld the legacies of persons residing in Russia prior to 1964. *Matter of Landau,* 172 Misc. 651 (1939); *Matter of Bold,* 173 Misc. 545 (1940); *Matter of Best,* 200 Misc. 332 (1951); *Matter of Torsky,* 36 Misc. 2d 101 (1962). In a more recent case, it was found that Russian heirs had sustained their burden of proof under the New York statute and a distribution was approved. *Matter of Saniuk,* 40 Misc. 2d 437, aff'd, 21 App. Div. 2d 922 (1964). The evidence relied upon in that case, being hearsay admitted without objection, was less reliable than the first-hand knowledge of the expert witness who testified here.

In respect to Hungary also, it should be noted that the New York surrogate courts have recently approved a distribution to a legatee residing in that country. *Matter of Szabados,* 40 Misc. 2d 1072 (1963). This holding was contrary to the result reached in a series of earlier cases. *Matter of Geiger,* 7 N.Y.2d 109 (1959); *Matter of Bartok,* 28 Misc. 2d 324 (1961); *Matter of Gargyan,* 27 Misc. 2d 137 (1960). In the more recent case, evidence was presented from which the court could find "that funds can be transmitted to Hungary through banking channels; that these can be exchanged into Hungarian currency at the rate of 23.48 Forints to the American dollar, which is in excess of the official rate of exchange of 11.74 Forints to the dollar; that

payment by such means has been authorized by recent decisions of the Surrogate's Court of Nassau County; and that the beneficiary may be able to come to this country and receive the funds in person if provided with an advance from his legacy for the expenses of such trip, which method has been recently employed by the Surrogate's Court of New York County." *Matter of Szabados, supra,* 1075.

In brief, the evidence supports the conclusion of the Probate Court that the Ukrainian legatee would have the use, benefit, and control of his legacy. Upon the same evidence, this court would make the same finding. Accordingly, no abuse of discretion can be found in respect to the order entered in respect to this legatee.

With respect to the Hungarian legatee, no evidence was presented in regard to the question at issue except the treasury regulation pertaining to checks and warrants drawn upon funds of the United States government. The Probate Court was not bound to accord this regulation any particular probative value. Its conclusion that the burden of proof rested upon the state treasurer accords with this court's interpretation of the statute involved. If this conclusion is correct, a decision upon the issue of use, benefit, or control against the state treasurer cannot be said to have constituted an abuse of discretion. The favorable experience in transmitting funds of other estates to Hungarian recipients, mentioned in the opinion of the Probate Court, lends some moral sanction to the determination made. This experience, however, not being a matter of record which can be reviewed on appeal, adds no legal support to the decision.

## IV

Several of the reasons of appeal are directed to the fact that the order of distribution appealed

from applies to only one-third of each legacy, two-thirds to remain in the hands of the executor until further order. The state treasurer, however, is in no position to complain that only a partial order of distribution was entered, since he is not aggrieved by this fact. It would seem that the partial order may have been appropriate under the circumstances so that some further assurance of payment to the proper party might be obtained before proceeding to distribute the balance.

## V

It is also claimed that the Probate Court should not have given effect to certain powers of attorney purportedly executed by the heirs to the New York firm of attorneys. The answer to this claim is that the order of the Probate Court does not indicate any such recognition of these powers of attorney. In fact, the order specified that the funds be distributed to each legatee by name. It appears that special provision was made for attorneys' fees to be incurred by the executor in effectuating a distribution in accordance with the order under some method satisfactory to the Probate Court.

## VI

The reasons of appeal which assert that the Probate Court failed to take judicial notice of certain matters, such as the treasury regulation involved, are unsound. It appears that such notice was taken, because reference is made to some of the matters in the opinion of the Probate Court. The gravamen of this claim is that the court did not deem the treasury regulation and other matters as conclusive or of controlling significance upon the issues.

The decree of the Probate Court is affirmed.