John D. Bennett, S.
This is an application by the widow and sole heir of Cornelius F. Gustav, deceased, to fix his fee as attorney for certain named persons, for services rendered to the estate of Emil Geiger pursuant to section 231-a of the Surrogate’s Court Act.
In this estate Mr. Gustav represented five persons behind the Iron Curtain in Hungary, whose distributive shares aggregating approximately $30,000, were held pursuant to section 269 of the Surrogate’s Court Act. He made a twofold application to this court: First, for 25 per cent of the amount due Ms clients pursuant to assignments executed by them in payment of attorney’s fees, and second to withdraw $250 a month in *398 behalf of each client to send “ Ikka ” packages to them. Both phases of relief were denied, since section 269 cannot be circumvented by assignment or otherwise, and because the Hungarian Government refused to permit the sending of ‘ ‘ Ikka ’ ’ packages.
This decision was appealed to the Court of Appeals where it was affirmed December 30, 1959, five to two, the dissenting Judges stating that a hearing should have been held on the application (7 N Y 2d 109).
The majority of the Court of Appeals, in their opinion, stated that the attorney, in a proper proceeding and upon a proper showing, may request the fixation of reasonable fees for services rendered, chargeable against the fund pursuant to section 231-b of the Surrogate’s Court Act. The present application by the widow and sole heir of the now deceased Cornelius F. Gustav may be the proceeding so suggested, but it is nominated one under section 231-a of the Surrogate’s Court Act. This court has before it two phases of the application, to wit: The reasonable value of any services rendered the estate generally, for which the estate should be charged under section 231-a, and the reasonable value of any services rendered to the clients individually which, under section 231-b, should be charged against the funds set apart for them.
Due allowance has been made for the difficulties of proof arising from the death of Mr. Gustav, and every effort has been made to ascertain any services rendered by him to the estate generally. This court is unable to find any substantial service so rendered. The court has admitted the affidavits and files offered in evidence over objection, for the purpose of receiving anything which might indicate some basis for a section 231-a application against the estate and is unable to find any evidence indicating services rendered to or beneficial to the estate, as distinguished from services rendered to the clients. The court therefore dismisses this proceeding as a section 231-a proceeding against the estate generally, and retains it as a section 231-b proceeding against the funds set apart for the clients of Mr. Gustav.
This court is not unaware of the statement made in the dissenting opinion of the Court of Appeals (p. 112), that Mr. Gustav “ appears to have rendered substantial legal services to the estate”. That statement continues with: “ including services in connection with a lawsuit involving $250,000.00 to set aside a trust established by the deceased and which was successfully terminated by settlement”. In the present proceeding before this court, the services in such spit are expressly *399 eliminated, as Mr. Gustav received full payment for the same during his lifetime in the amount of $9,200.
The court therefore considers this matter only as a question of the reasonableness of the fee to be fixed under section 231-b, against the share of the money held for Mr. Gustav’s clients. The amount requested is $12,000, based on an alleged 600 hours of services rendered at $20 per hour. The figure of 600 hours is a highly tenuous estimate made by an associate from an inspection of the deceased attorney’s files. The deceased did not keep a diary or record of time spent. There is no attempt to segregate matters already paid for from other services performed, nor was any consideration given to the vast amount of time necessarily expended in the unsuccessful appeals from the decision of this court.
Coming down to specific information, this court has been furnished with two files of papers and certain testimony which was very vague. Much was said about the application for “ Ikka ” packages, which was denied and such denial affirmed. At one point this court asked: “ Q Is it my understanding that you want $12,000.00 paid from the estate for representing five Hungarian people in connection with care packages! ” The reply to this was: “A That is the major services he rendered. (Emphasis supplied.) He also attended here on the accounting proceeding. There was an application he made in connection with temporary administrators. ’ ’ Nothing appears in the record which would seem to warrant any such fee as $12,000, or any necessity of expenditure of 600 hours of time.
Two collateral matters may throw some light on a reasonable fee. Had Mr. Gustav been successful in obtaining payment to his clients of the $30,000, he would have received 25% thereof, or $7,500, for his fee under the assignment. Since he was unsuccessful, his fee would naturally be less than this sum rather tlia.n more. Secondly, if Mr. Gustav had the complete handling and control of an estate of $30,000, including tax proceedings and an accounting, the minimum fee schedule of the Nassau County Bar Association would have provided for a fee of $1,950.
In view of these facts and after consideration of all matters submitted, this court fixes as the compensation to be paid the widow and sole heir of Cornelius F. Gustav, for services rendered his principals under section 231-b of the Surrogate’s Court Act, the sum of $2,000, which shall be chargeable against the fund set apart for his clients.