Harry G. Herman, S.
In previous decisions in this estate (Matter of Draganoff, 43 Misc 2d 233 and 46 Misc 2d 167) this court denied applications to transmit to Bulgaria the distributive shares of the alien nonresident distributees residing there, because the court was not convinced that said distributees would get “ the benefit or use or control ” of these funds within the meaning of section 269-a of the Surrogate’s Court Act.
Messrs. Wolf, Popper, Boss, Wolf & Jones, who appeared therein as attorneys in fact and attorneys at law for the Bulgarian distributees, now petition the court for the fixation of their fee as attorneys at law for legal services rendered to the Bulgarian distributees (Surrogate’s Ct. Act, § 231-a), and expressly disclaim any fees as attorneys in fact (cf. Surrogate’s Ct. Act, _§ 231-c).
In their petition they allege a fee arrangement with the forwarding “ attorneys ” of “ 20% of the net amount due to our clients, of which 16% is retained by us and 4% is forwarded to the Law Office for Foreign Legal Matters.”
There is also an affidavit filed pursuant to rule 26 of the Westchester County Surrogate’s Court Buies in connection with the recording of the powers of attorney that such fee arrangement was in accordance with an agreement alleged to have been made in 1962 between this firm and the forwarding ‘ ‘ law firm ’ ’ concerning fees in connection with matters relating to interest of Bulgarian nationals in estates in the Greater New York area.
These allegations, however, are contrary to the sworn testimony of Peter Stephanov in the trial of this matter that the total attorneys’ fee agreed to was 24%: 4% for the forwarding “law firm” and 20% for Wolf, Popper, Boss, Wolf & Jones, *857 which statement was confirmed in open court by Martin Popper, a partner in the firm.
No showing is made or attempted to be made that 24% — or 20% — of the aggregate shares of these distributees is a reasonable fee for services rendered (cf. Mailer of Geiger, 7 N Y 2d 109, 112). Nevertheless it is argued that the reasonable value of the services performed is at least equal to the amount specified in the agreement with the forwarding “ law firm”. However, on the oral argument of this application it was conceded that the petitioning firm cannot now recover upon the afore-mentioned alleged agreement, which has never been produced, but must be compensated upon a quantum meruit basis (Matter of Chabanuk, N. Y. L. J., June 25, 1964, p. 17, col. 2; Matter of Hers, 14 Misc 2d 1005, 1006-1007; Matter of Torsky, 36 Misc 2d 101, 103; cf. Matter of Bargel, 5 Misc 2d 657, affd. 7 A D 2d 645, mot. for lv. to app. den. 5 N Y 2d 710).
The requested disbursement of $3.35 for postage is disallowed. Disbursements are allowed in the sum of $314.51, which will reduce the total distributive shares of the Bulgarian nationals from $1,404.66 to $1,090.15.
As Surrogate Frankenthaler stated in Matter of Braunstein (202 Misc. 244, 246-247): “In fixing the value of such services, consideration must be given to the fact that irrespective of any representation of the legatees in this proceeding, the court would direct the deposit of the legacies into the city treasury and thus the appearance of the attorney in fact does not affect the present disposition of the legacies.”
The petitioning attorneys did render services to their clients in establishing their identity as the distributees of the decedent and in examining the account on their behalf (Matter of Braunstein, supra, p. 247). But, as was stated by Surrogate Dillon in Matter of Babich (200 N. Y. S. 2d 226, 228): “ under the circumstances, these services must be evaluated in the light of the improbability of their client ever receiving such assets by reason of the conditions which exist and have existed for a long period of time in the country where the distributee resides. ’ ’
The request of the attorneys that the fee now fixed include compensation for “ all future services ” for which, they allege, no further compensation would be sought, must be denied (see Matter of Wengrowski, N. Y. L. J., March 5, 1964, p. 16, col. 4). There is no assurance that any future services that might be performed for the Bulgarian distributees will, in fact, be performed by the present petitioners,
*858 Nothing in the record would warrant a fee of 24% (or even one of 20%). Had the petitioners been successful in obtaining payment to all of their clients, a fee of 24% of the net amount under the alleged agreement, if such agreement were binding on the court (see Matter of Bargel, supra), would be $261.64. Since they Avere unsuccessful, their fee naturally must be less than this sum (Matter of Geiger, 25 Misc 2d 397, 399).
The Bench and the Bar have long recognized that fees to be awarded in small estates can never adequately compensate attorneys for the services that they have rendered. From the court’s observation in this entire proceeding, it was obvious that this was in the nature of a test case which would, if successful, determine most, if not all, of such similar matters involving Bulgarian nonresident distributees. In view of all these facts and circumstances, the fee of the attorneys for the Bulgarian distributees is fixed in the sum of $125 (see, also, Matter of Rysiakiewicz, 114 N. Y. S. 2d 504). The fee and disbursements shall be apportioned among the shares of the clients, to be deposited pursuant to section 269-a of the Surrogate’s Court Act, according to their respective interests in this estate (Matter of Chabanuk, supra). Settle order.